**BECTON DICKINSON AND COMPANY, Appellant,**

v.

**DISTRICT 65, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, AFL–CIO.**

No. 85–5776.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) July 25, 1986.

Decided Aug. 25, 1986.

Thomas W. Budd and G. Peter Clark, Clifton, Budd, Burke & DeMaria, New York City, for appellant.

Eugene G. Eisner and Miriam F. Clark, Eisner & Levy, P.C., New York City, for appellee.

Before GIBBONS, WEIS and SLOVITER, Circuit Judges.

OPINION OF THE COURT

SLOVITER, Circuit Judge.

I.

Becton Dickinson and Company appeals from the order of the district court denying its motion for a permanent stay of arbitration, dismissing the complaint, and awarding attorneys' fees to the Union.

The dispute arises out of the decision of the Company, which is engaged in the sale and distribution of medical diagnostic instruments and related products, to close its manufacturing facility in Parsippany, New Jersey. The Union, District 65, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL–CIO, which represents production, clerical, and research and development employees of the Company, was notified of this decision in February, 1985. The Company and the Union met on March 23, 1985 and on April 11, 1985 in negotiations regarding the planned plant closing and transfer of the bargaining unit work to other facilities. On May 20, 1985, the Union sent a letter to the Company requesting information from the Company about the proposed move, including the future status of non-Union employees.

On May 28, 1985, Leslie Roberts, Regional Director of District 65, sent a letter to Val Brose, Director of Human Resources for the Company, stating:

Based on information that has been provided to us to date, by you and other sources, it appears to me that the Company may be violating the following provisions of the collective bargaining agreement, based upon your proposed move from the Parsippany facility:

Article I—Mutual Good Faith Intent

Article II—Management Rights

Article III—Recognition

Article V—5.06—Non-Discrimination

Article XXVIII—Liquidation of Business

Article XLIII—Expansion of Operation

The foregoing list may not represent a complete list of the possible violations. The Union is still investigating other possible violations. Please call me, as soon as possible, to set up a meeting to resolve these violations.

App. at 34.

On May 29, one day after the Company received the letter, the Union and Company

met again to negotiate. The parties dispute what occurred at the meeting. The Union's counsel states in her affidavit that at the meeting she "clearly informed the Company that it was the Union's position that the Company's planned closing of the Parsippany facility violated the collective bargaining agreement, and I specifically referred to the Union's May 28 grievance to that effect." App. at 76. In contrast, Val Brose's affidavit states that, "There was no discussion of any grievance or alleged contract violation by the Company concerning the closing." App. at 24.

On May 30, 1985, the Company announced that all Union employees at the Parsippany plant would be terminated effective June 5.

On May 31, 1985, the Company sent a letter to the employees describing the course of negotiations and seeking to persuade the employees that the Union's bargaining position was against their own best interests. In the letter, the Company stated:

> On May 28 the union sent another letter to the company. This one contending that the company had violated certain provisions of the collective bargaining agreement with respect to the shutdown of Clay Adams manufacturing operations. Again, it appears to the company that the May 28 letter is nothing more than an overt attempt by the union to stall negotiations. This is made evident by the fact that the union was informed of the closedown of the Clay Adams manufacturing operations three full months prior to this letter.

App. at 73.

Also on May 31, 1985, three days after its letter to the Company mentioning violations and five days before the scheduled plant closing, the Union advised the American Arbitration Association ("AAA") that a dispute existed and requested the appointment of an arbitrator. The Company objected, contending that no grievance had been submitted as required by the collective bargaining agreement. That agreement provides that the Union may initiate a grievance regarding the general application, interpretation or alleged violation of the agreement; requires that such a grievance be submitted in writing; and provides that the Company shall answer the grievance in writing within five working days following the grievance meeting. The Union responded that a grievance had been filed and that the Company could present its objection to the arbitrator. The AAA notified the parties that it had "determined that an issue as to arbitrability exists which could be determined by an arbitrator" and that it would proceed with the matter.

Becton Dickinson then filed this suit pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, seeking a preliminary and permanent stay of the arbitration based on the "total failure" of the Union "to comply with the Grievance Procedure." App. at 11–12. The Union counterclaimed stating that the "complaint is frivolous and without merit and was instituted solely for the purposes of harassment and delay." App. at 56.

The district court, after hearing oral argument, but without holding an evidentiary hearing, denied Becton Dickinson's motion to enjoin the Union from proceeding to arbitration, dismissed the action, and awarded the Union attorneys' fees after finding that Becton Dickinson "was extremely frivolous and unreasonable in bringing this action." App. at 127.

## II.

Becton Dickinson argues that it was entitled to a permanent stay of the arbitration because the Union, in its view, failed to follow the grievance procedure of the collective bargaining agreement requiring that there be a written grievance and that the Company be allowed five working days following the grievance meeting to answer in writing. The district court held that these were procedural questions and that this case "lies squarely under the rule laid out in" *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), which held that procedural

questions growing out of the dispute should be left to the arbitrator. App. at 126.

In *Wiley,* the union sought to enforce a collective bargaining agreement that it had negotiated with a company that had subsequently merged into Wiley. It sought to compel Wiley to arbitrate various disputes. The Supreme Court, construing the labor contract in light of the preference for arbitration in national labor policy, held that the agreement to arbitrate survived the merger. 376 U.S. at 548–51, 84 S.Ct. at 913–15. Significant for our present purposes is the Court's rejection of Wiley's argument that it had no duty to arbitrate because the union failed to meet two of the contract's steps to arbitration: a time limitation on the filing of grievances, and two conferences between union and management representatives. The Court stated:

> Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, "procedural" questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator. ... Although a party may resist arbitration once a grievance has arisen, as does Wiley here, we think it best accords with the usual purposes of an arbitration clause and with the policy behind federal labor law to regard procedural disagreements not as separate disputes but as aspects of the dispute which called the grievance procedures into play.

*Id.* at 557–59, 84 S.Ct. at 918–19.

Becton Dickinson contends that our decision in *Philadelphia Printing Pressmen's Union No. 16 v. International Paper Company, Single Service Division,* 648 F.2d 900 (3d Cir.1981), is controlling and compels us to hold that the absence of a written grievance bars arbitration. In *Philadelphia Printing Pressmen's Union No. 16,* which arose after *Wiley,* an employee was terminated due to his failure to return to work or to contact the employer during his leave of absence. Although the union claimed that it had telephoned the plant superintendent during the employee's leave and orally notified him of its objections to the Company's system of limited leaves of absence and its application to this employee, neither the employee nor the union protested the termination. The matter was not raised again until nearly ten months later when the union asked the company to reconsider the employee's termination. In the interim, a replacement had been hired and achieved seniority status.

We held that the union's attempt to skip the entire grievance machinery could not be condoned. We rejected the argument that the requirement of a written statement of an alleged grievance was a mere procedural formality, and emphasized the importance of the writing requirement in avoiding misunderstandings between the parties.

We characterized the Union's action as follows: "the Union's failure is neither procedural nor merely 'literal,' it is total, thereby preventing the dispute from ripening into a grievance." 648 F.2d at 904 n. 7. We contrasted that situation with the "case where the union has detailed its dispute in writing as required by the collective bargaining agreement and the union's only failure to comply with the grievance machinery is procedural." *Id.* We referred as an example of the latter situation to *Chauffeurs, Teamsters & Helpers, Local Union No. 765 v. Stroehmann Brothers Co.,* 625 F.2d 1092 (3d Cir.1980), a post-*Wiley* case, where we had held that "the significance of a default [delay in submission and failure to timely furnish a copy of the submission] in literal compliance with a contractual procedural requirement" was a matter for the arbitrator. *Id.* at 1093.

■ We reject Becton Dickinson's argument that *Philadelphia Printing Pressmen's Union No. 16* controls here. Unlike *Philadelphia Printing Pressmen's Union No. 16,* where neither the employee nor the Union submitted a written grievance when they were informed of the Company's leave of absence policy, when the employee was terminated, or when the employee called to request reemployment at some future date,

here the Union sent a letter to the Company listing possible violations and requested that the Company telephone to set up a "meeting to resolve these violations." App. at 34. Moreover, Becton Dickinson's contention that the Union filed no written grievance is inconsistent with its May 31, 1985 letter to the employees explicitly acknowledging that the Union had contended in its previous letter of May 28 that "the company had violated certain provisions of the collective bargaining agreement...." App. at 73. Whatever the effect of the Union's procedural defaults, the Union did not totally fail to follow the grievance procedure as in *Philadelphia Printing Pressmen's Union No. 16.*

Becton Dickinson does not contend that the subject matter of the dispute concerning the termination of the Clay Adams division was not arbitrable. Thus, this case falls under the rule of *Wiley* that "it best accords with the usual purposes of an arbitration clause and with the policy behind federal labor law to regard procedural disagreements not as separate disputes but as aspects of the dispute which called the grievance procedures into play." 376 U.S. at 559, 84 S.Ct. at 919. The district court therefore did not err in refusing to enjoin the arbitration and in dismissing the complaint.

### III.

The district court's order dismissing the complaint also ordered that defendant be awarded costs, disbursements, and reasonable attorneys' fees of the proceeding. In its appeal, Becton Dickinson argues that the district court erred in allowing attorneys' fees to the Union in this matter. We must decide whether this portion of the appeal is properly before us.

■ The court's order denying the injunction and dismissing the complaint is patently appealable. *See American Bell Inc. v. Federation of Telephone Workers of Pennsylvania,* 736 F.2d 879 (3d Cir. 1984). The decision on the merits is appealable notwithstanding the district court's failure to make a final determination with

respect to attorneys' fees. *See West v. Keve,* 721 F.2d 91, 93 (3d Cir.1983).

■ The district court's order directing that the defendant be awarded "reasonable attorneys' fees" has not yet been reduced to a definite amount. It is, therefore, not final within the meaning of 28 U.S.C. § 1291. A "final decision" is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 373, 101 S.Ct. 669, 672–73, 66 L.Ed.2d 571 (1981) (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978)). Until the amount of attorneys' fees has been set, there remains to be made a decision by the district court.

Becton Dickinson recognizes that the general rule in this circuit is that if the award of attorneys' fees is not reduced to a definite amount, that award is not final. *See May v. Cooperman,* 780 F.2d 240, 243 n. 1, 253 (3d Cir.1985), *appeal docketed sub nom. Karcher v. May,* 54 U.S.L.W. 3650 (U.S. Mar. 18, 1986) (No. 85–1551); *Bandai America, Inc. v. Bally Midway Mfg. Co.,* 775 F.2d 70, 75 (3d Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). Becton Dickinson argues that if we do not decide the issue of entitlement to attorneys' fees against it on this appeal, a second appeal will be necessary and judicial economy will suffer. It does not necessarily follow that by deciding the attorneys' fee issue now we would thereby prevent a second appeal. If we were to affirm the district court's order, there remains the possibility of an appeal on the amount of attorneys' fees awarded, litigation with which this court has become increasingly familiar.

In any event, jurisdictional issues are not subject to our discretion. We recognize that the Seventh Circuit has taken jurisdiction over such an appeal on the theory that there would be "a net diseconomy, if we held that we could not consider the merits of the fee order until the amount of fees to be awarded is fixed." *Bittner v. Sadoff &*

*Rudoy Industries,* 728 F.2d 820, 827 (7th Cir.1984). We view the jurisdictional rules precluding review of non-final orders as more firmly entrenched. We thus reaffirm our earlier decisions that appeals from an award of attorneys' fees may be filed only after the amount of the attorneys' fees has been determined by the district court.

### IV.

For the foregoing reasons, we will affirm the order of the district court dismissing the complaint, and we will dismiss without prejudice so much of the appeal as has been taken from the order awarding attorneys' fees.[1]

---

1. We decline to characterize Becton Dickinson's appeal as frivolous, and, therefore, we will deny the Union's request for damages and costs pursuant to Rule 38 of the Federal Rules of Appellate Procedure.