United States Court of Appeals,

Fifth Circuit.

Nos. 92-3595, 92-3766

Summary Calendar.

SOUTHERN TRAVEL CLUB, INC., Plaintiff-Appellant,

v.

CARNIVAL AIR LINES, INC., Defendant-Appellee.

SOUTHERN TRAVEL CLUB, INC., Plaintiff-Appellant, Cross-Appellee,

v.

CARNIVAL AIR LINES, INC., Defendant-Appellee, Cross-Appellant.

March 24, 1993.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before KING, DAVIS and WIENER, Circuit Judges.

PER CURIAM:

Southern Travel Club, Inc. ("Southern Travel") appeals from two adverse decisions of the district court. In No. 92-3595, Southern Travel appeals from the district court's order dismissing with prejudice its breach of contract claims against Carnival Airlines, Inc. ("Carnival"). In No. 92-3766, Southern Travel appeals the district court's order awarding Carnival costs and attorney's fees in an amount yet to be determined. For the following reasons, we affirm the district court's judgment in No. 3595, and dismiss Southern Travel's appeal in No. 92-3766.

I. BACKGROUND

On January 28, 1991, Southern Travel and Carnival entered into two, substantially similar passenger airplane charter agreements. Under the first charter agreement, which was to commence on May 2, 1991, Carnival agreed to provide Southern Travel with a "737-200" type aircraft to make two round trip flights per week between Las Vegas and New Orleans. Under the second such agreement, which was to commence on May 17, 1991, Carnival agreed to provide Southern Travel with the same type of aircraft to make two round trip flights per week between Las Vegas and

Birmingham, Alabama. Both of the agreements provided that:

(1) Carnival was to supply an aircraft capable of making *non-stop* trips between Las Vegas and New Orleans/Birmingham;[1]

(2) Carnival could, at its option, substitute comparable or larger aircraft of a type different than that specified on the cover page without penalty, provided that any such substitute aircraft did not result in an increase in the charter price paid by Southern Travel;

(3) If, for any reason, Carnival determined, prior to a given flight's departure, that the landing facilities at any point on the itinerary of the charter were inadequate for a safe operation, or if landing was prohibited or restricted by law, statute or regulation, Carnival could substitute the nearest landing point at which, in Carnival's sole judgment, suitable landing facilities were available and landing could be made; and

(4) Although the term of the agreement was for six months, the agreement could be cancelled by either party with sixty days notice without penalty.

In accordance with the first charter agreement, the twice-a-week flights between Las Vegas and New Orleans began on May 2, 1991. The round trip, non-stop flights between the two cities apparently occurred without incident during the first week of the agreement. On May 11, 1991, however, the plane flying from New Orleans to Las Vegas made an unscheduled stop in Houston. When some of Southern Travel's passengers complained about the unscheduled stop, Southern Travel in turn complained to Carnival.

Upon receiving Southern Travel's complaint about the unscheduled stop in Houston, Carnival decided to exercise its termination rights under the two charter agreements. By letter dated May 13, 1991, Carnival notified Southern Travel that it planned to "cease operating the Las Vegas program to both New Orleans and Birmingham effective sixty days from that date." And, after notifying Southern Travel of its intent to terminate the charter agreements, Carnival substituted a larger aircraft (a "727-100" type aircraft) to fly during the remaining sixty days of the contracts.

Over the next few days, the parties attempted to renegotiate the charter agreements, but the negotiations were unsuccessful. Southern Travel then approached other carriers about taking over the charter service between Las Vegas and New Orleans/Birmingham. American Trans Air agreed to take over the twice-a-week round trip flights between Las Vegas and New Orleans/Birmingham,

---

[1]According to Southern Travel: "The non-stop capability of the aircraft was essential for Southern to be able to compete with the major airlines."

but as a condition of its agreement, required Southern Travel to put down a cash deposit and prepay the first four flights, for a total of $157,900.

Having quickly found a substitute carrier, Southern Travel decided that it did not want to wait the full sixty days for its charter agreements with Carnival to terminate. Accordingly, on May 22, 1991, Southern Travel requested immediate termination of its charter agreements with Carnival. Southern Travel also requested that Carnival return $201,940 in pre-paid aircraft time and deposits.

In response to Southern Travel's request for immediate termination, Carnival faxed Southern Travel a letter setting forth a "reconciliation" of accounts. In this letter dated May 23, 1991, Carnival agreed to refund $176,310 to Southern Travel. The letter further provided:

> This payment releases both Southern Travel Club and Carnival Air Lines from any further liability and/or responsibility arising out of our contracts. Your return fax of this agreement will be a final release by both parties.

Upon receiving the fax, Southern Travel's President signed the letter and faxed it back to Carnival. And, several days later, Southern Travel received a check in the amount of $176,310 from Carnival.

Despite executing the release, Southern Travel filed a breach of contract suit against Carnival in state court in July 1991. Carnival removed the case to federal district court based on diversity of citizenship. The case was tried to the district court on June 15, 1992, and after Southern Travel had presented its evidence, Carnival moved for a involuntary dismissal under Rule 41(b) of the Federal Rules of Civil Procedure. The district court treated the motion as one for judgment on partial findings under Rule 52(c) of the Federal Rules of Civil Procedure and, by order dated June 15, 1992, dismissed Southern Travel's breach of contract claims with prejudice. On June 26, 1992, Southern Travel filed a timely notice of appeal from the order dismissing its breach of contract claims.

Thereafter, Carnival filed a motion for Rule 11 sanctions against Southern Travel and its attorney. In a memorandum ruling dated August 13, 1992, the district court found that Southern Travel's suit against Carnival was "frivolous." It stated:

> Prior to the filing of this action, [Southern Travel] had resolved its claim against [Carnival] and released [Carnival] from further liability. [Southern Travel] subsequently filed this lawsuit, contending that it signed the release under economic duress, such that, if it did not obtain the [$176,310] refund immediately, it would go out of business. During the trial of this matter, [Carnival] introduced [Southern Travel's] bank records, which indicated that [Southern Travel] had sufficient funds. In particular, [Southern Travel] had sufficient funds

to engage another entity to provide the desired services.  Surely, [Southern Travel] was aware of its financial ability at the time it executed the release.  Accordingly, [Southern Travel] knew it had not suffered from economic duress when it executed the release.  As such, [Southern Travel's] filing of this action was wholly meritless.

Having found that Southern Travel and its attorney violated Rule 11, the district court then considered what would constitute an appropriate sanction.  It concluded that, because Carnival could have timely filed a motion for summary judgment that would have disposed of Southern Travel's claim, Carnival was only entitled to recover the attorney's fees and costs that would have been incurred in (a) filing an answer to Southern Travel's complaint, (b) preparing a motion for summary judgment, and (c) conducting and responding to related discovery.  Thus, while the district court granted Carnival's motion for Rule 11 sanctions, it referred to a magistrate judge the determination of the appropriate amount of fees and costs.  Southern Travel filed a notice of appeal from this memorandum ruling on September 1, 1992.

## II. ANALYSIS

A. No. 92-3595:  The District Court's Order of Dismissal

As already discussed, the district court granted Carnival's motion for "involuntary dismissal"—or judgment as a matter of law—at the close of Southern Travel's case.  In accordance with Rule 52 of the Federal Rules of Civil Procedure,[2] the district court rendered certain findings of fact and conclusions of law.  Among other things, the district court determined that (1) by executing the letter dated May 23, 1991 and returning it to Carnival, Southern Travel released Carnival from any liability for breach of contract, and (2) Southern Travel was not under economic duress when it

---

[2]Rule 52(c) provides, in pertinent part:

> If during a trial without a jury a party has been fully heard with respect to an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party on any claim, counterclaim, cross-claim or third party claim that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all evidence.  Such a judgment shall be supported by findings of fact and conclusions of law as required by subdivision (a) of this rule.

FED.R.CIV.P. 52(c).

executed and returned the release to Carnival.[3]

On appeal, Southern Travel contends that the district court erred by dismissing its breach of contract claims against Carnival. Southern Travel raises several arguments to support its position, only one of which we need consider on appeal.[4] In particular, we must address Southern Travel's argument that, because it signed the release under economic duress, the release is invalid.

Because the district court's finding of "no economic duress" was made in accordance with Rule 52(c), we review it only for clear error. *See* Advisory Committee Notes to Rule 52(c) (judgment on partial findings, unlike a summary judgment, "is made after the court has heard all evidence bearing on the crucial issue of fact, and the finding is reversible only if the appellate court finds it to be "clearly erroneous' "); *see also Benton v. Blair,* 228 F.2d 55, 58 (5th Cir.1956). That is, we will not set aside the district court's finding in this regard unless, based upon the entire record, we are "left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). "If the district court's account of the evidence is plausible in light of the record," we will not reverse it—even if convinced that had we "been sitting as trier of fact, [we] would have weighed the evidence differently." *Id.* at 573-74, 105 S.Ct. at 1511.

We conclude that the district court did not clearly err in finding that Southern Travel was not under economic duress when it signed and returned the release to Carnival. Although the President of Southern Travel testified that the company sorely needed the money that Carnival offered to return in order to pay the substitute carrier, his testimony was severely impeached on cross-examination by Carnival. In particular, Carnival introduced bank records from Southern Travel revealing that

---

[3]The district court also determined that: (a) Carnival did not breach its charter agreements with Southern Travel; (b) even if Carnival had breached the charter agreements, Southern Travel suffered no provable damages; (c) Carnival did not breach any duty of good faith by giving sixty days notice of its intent to terminate the charter agreements.

[4]Southern Travel also contends that the district court erred in determining that: (a) Carnival did not breach the charter agreements; (b) Carnival did not breach its duty of good faith in terminating the charter agreements; and (c) Southern Travel did not suffer any provable damages as a result of Carnival's actions. Because we conclude that the district court correctly dismissed Southern Travel's claims on the basis of the release it signed and returned to Carnival, Southern Travel's other contentions—even assuming they are meritorious—are irrelevant.

Southern Travel was capable of paying—and indeed did pay—the substitute carrier *before* receiving any of the $176,310 refunded by Carnival. The bank records introduced by Carnival further reveal that Southern Travel had $218,262.66 in the bank *after* paying the substitute carrier and *before* depositing the refund from Carnival. Because the district court's finding of "no economic duress" is plausible, especially in light of the cross-examination of Southern Travel's President, we decline to set it aside as clearly erroneous.

Accordingly, we hold that the district court did not err in dismissing with prejudice Southern Travel's breach of contract claims against Carnival. By signing and returning the May 23, 1991 letter to Carnival, Southern Travel released Carnival for any breach of contract. Further, as we have determined, Southern Travel's claim that it signed the release under "economic duress" is meritless. Even assuming that a showing of economic duress would allow Southern Travel to escape the express terms of the release, Southern Travel simply did not demonstrate that it suffered from any such duress.

## B. No. 92-3766: The District Court's Rule 11 Sanction Order

Southern Travel also appeals from the district court's August 13, 1991 order granting Carnival's motion for sanctions. In the August 13 memorandum order, the district court determined that Southern Travel and (and apparently its attorney) violated Rule 11 of the Federal Rules of Civil Procedure. The district court further determined that Carnival was entitled to recover "only those fees and costs incurred to answer and prepare the motion for summary judgment, including related discovery." The district court did not, however, fix the amount of those fees and costs, but instead referred "the determination of the appropriate amount" of sanctions to a magistrate judge. Thus, while the district court made a "liability" determination as to sanctions, it did not compute the "damages."

On appeal, Southern Travel argues that the district court erred in awarding sanctions against it and its attorney. In particular, Southern Travel argues that "[t]he district judge clearly abused his discretion in applying Rule 11 of the Federal Rules of Civil Procedure to the filing of [a state court petition that was subsequently removed to federal court]." Southern Travel also contends that the

district judge abused his discretion by not considering Carnival's failure to timely notify the court or Southern Travel "of its claim of an alleged Rule 11 violation."

Initially, we must consider whether we have appellate jurisdiction to consider Southern Travel's appeal from the district court's sanction order. Southern Travel argues that we do, stating: "This is an appeal from a final decision of the district court under 28 U.S.C. § 1291." We disagree.

Under 28 U.S.C. § 1291, we may only review a district court's decision if it is "final." A decision is "final" within the meaning of section 1291 if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 373, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981) (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978)). An order that determines the issue of liability but leaves unresolved the assessment of damages is not final within the meaning of section 1291. *See Liberty Mutual Ins. Co. v. Wetzel,* 424 U.S. 737, 742-44, 96 S.Ct. 1202, 1206, 47 L.Ed.2d 435 (1976).

Had Southern Travel's appeal from the district court's Rule 11 sanction order not been consolidated with Southern Travel's appeal from the district court's order dismissing its breach of contract claims, we would have no trouble dismissing the appeal from the sanction order for lack of jurisdiction. That is, the Rule 11 sanction order would fall squarely within the rule that an order determining liability but leaving unresolved the question of damages is not an appealable final decision. In *Williams v. Ezell,* 531 F.2d 1261, 1263 (5th Cir.1976), this court expressly held that an order granting a motion for attorney's fees "but reserv[ing] the question of the amount pending a meeting between the parties" was not a final order for purposes of appellate review. We reasoned: "That order clearly left for a later determination the amount of the attorneys fees, an important component of the plaintiffs' potential obligation." *See also Lac Courte Oreilles Chippewa Band of Lake Superior Chippewa Indians v. Wisconsin,* 829 F.2d 601, 603 (7th Cir.1987) ("An award of attorney's fees that does not fix the amount of the award or specify a formula allowing the amount to be computed mechanically is not a final decision within the meaning of section 1291.").

The precise question involved in this case, however, is whether a district court's order that

grants a motion for sanctions, but does not fix the amount of the sanctions, is reviewable if consolidated with an appeal from a final judgment. In *Bittner v. Sadoff & Rudoy Industries,* 728 F.2d 820 (7th Cir.1984), the Seventh Circuit considered this precise issue and held that such an order is reviewable on appeal from the underlying final judgment. The *Bittner* court reasoned that, because the district court's underlying decision dismissing the plaintiff's complaint was an appealable "final decision," the district court's order awarding the defendant attorney's fees, but not setting the amount of those fees, was also reviewable. The court stated:

> These circumstances bring into play the principle that a court of appeals may, in the interest of orderly judicial administration, review matters beyond that which supplies appellate jurisdiction. The [underlying] judgment dismissing the complaint is properly before us, independently of the attorney's fee award, because a judgment is not deprived of its finality by the fact that the district court has not yet acted on a party's claim for statutory attorney's fees. We might as well decide at the same time what are likely to be the dispositive issues relating to the award of attorney's fees. It is possible but unlikely that we shall have to consider the award again.

*Id.* at 826-27 (internal quotations and citations omitted). Thus, at least in the Seventh Circuit, there is an exception to the general rule that an order awarding fees in an amount not yet determined is unreviewable on appeal: Such an order is reviewable where it "can be consolidated on appeal with a final order." *Lac Courte Oreilles Chippewa,* 829 F.2d at 603.

Other courts of appeal have refused to follow the Seventh Circuit's lead in creating an exception to the rule that non-final orders awarding sanctions or attorney's fees are not reviewable. In *Phelps v. Washburn University of Topeka,* 807 F.2d 153, 154-55 (10th Cir.1986), the Tenth Circuit declined to follow *Bittner* and held that, if an award of attorney's fees is not reduced to a sum certain, it is not final and is therefore not reviewable—even if the appeal from the attorney's fee award may be consolidated with an appeal from the underlying final judgment. The Third Circuit has similarly rejected the *Bittner* exception. In *Becton Dickinson & Co. v. District 65, United Automobile, Aerospace & Agricultural Implement Workers of America,* 799 F.2d 57 (3d Cir.1986), the Third Circuit held that the portion of the district court's order awarding attorney's fees in an amount not yet determined was not reviewable, despite the fact that the other portion of the district court's order was "patently appealable." *Id.* at 61. It stated:

> [J]urisdictional issues are not subject to our discretion. We recognize that the Seventh Circuit

> has taken jurisdiction over such an appeal on the theory that there would be a "net diseconomy, if we held that we could not consider the merits of the fee order until the amount of fees to be awarded is fixed." [citing *Bittner* ] We view the jurisdictional rules precluding review of non-final orders as more firmly entrenched. We thus reaffirm our earlier decisions that appeals from an award of attorneys' fees may be filed only after the amount of attorneys' fees has been determined by the district court.

*Id.* at 61-62.

We now join the Tenth and Third Circuits in holding that an order awarding attorney's fees or costs is not reviewable on appeal until the award is reduced to a sum certain. While this requirement may result in some "diseconomy," we are not persuaded that the *Bittner* exception to the "final decision" rule is warranted. Like the Third Circuit, we "view the jurisdictional rules precluding review of non-final orders as more firmly entrenched." Moreover, the *Bittner* exception, in our view, has the potential to create unnecessary confusion about when the appellate timetable begins to run with respect to a district court's decision to award sanctions. Under the rule we embrace, the appellate timetable will not begin to run with respect to an order awarding sanctions until the award is reduced to a sum certain.

Accordingly, we hold that we do not have jurisdiction to consider Southern Travel's appeal from the district court's Rule 11 sanction order. The order does not reduce the sanctions to a sum certain and therefore is not an appealable final decision.

## III. CONCLUSION

For the reasons stated above, we vacate our order consolidating Southern Travel's appeals as improvidently granted. In No. 92-3595, we AFFIRM the district court's judgment dismissing Southern Travel's breach of contract claims against Carnival. In No. 92-3766, we DISMISS Southern Travel's appeal for lack of jurisdiction. Southern Travel shall bear the costs of these appeals.