Richard Henry SHAW and
Brenda Dawson Shaw

v.

HOUSING AUTHORITY OF the TOWN
OF LAKE PROVIDENCE, et al.

Civ. A. No. 93–0318.
Bankruptcy No. 91–10299–M13.
Adv. No. 91–AP–1314.

United States District Court,
W.D. Louisiana,
Monroe Division.

Aug. 31, 1993.

Madeleine M. Slaughter, Monroe, LA, for appellants.

William G. Kelly, Jr., Davenport Files & Kelly, Monroe, LA, for appellees.

LITTLE, District Judge.

This is an appeal from a judgment of the bankruptcy court in an adversary proceeding brought by debtor Richard Shaw. Shaw, who is black, filed for Chapter 13 bankruptcy relief on 5 February 1993. At that time, he was employed with the maintenance department of the Lake Providence Housing Authority. One of Shaw's debts was owed to Great American Acceptance Corporation, whose president and majority shareholder, John T. Ellis, was also a member of the Housing Authority's Board of Commissioners. Shaw alleges that Ellis called Shaw into his office in March 1991 and asked Shaw to pay the debt outside the bankruptcy plan. John W. Kester, Executive Director of the Housing Authority, fired Shaw on 26 July 1991, purportedly for failing to complete inspections after being instructed repeatedly to do so. When Shaw objected to the termination, the Board of Commissioners scheduled a special meeting at which Shaw was given the opportunity to present his case. The Board unanimously ratified the termination, the newest member abstaining for lack of familiarity with the facts. Shaw then filed this suit with the Bankruptcy Court against the Housing Authority, Kester, Ellis, and the other four members of the Board, seeking damages and attorney fees on grounds that the discharge constituted discrimination under section 525 of the Bankruptcy Code as well as racial discrimination in violation of 42 U.S.C. § 1981, § 1983 and § 1985. A trial was held, and the defendants moved for dismissal at the conclusion of the plaintiff's case. The bankruptcy court granted the motion and entered judgment in favor of the defendants. Shaw

appeals. Finding no reversible error, we AFFIRM.

## A. Standard of Review

■ The bankruptcy court dismissed the claims pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. Prior to the 1991 revision, this rule would have been the proper vehicle for dismissing a non-jury action on the merits when the plaintiff has failed to carry his burden of proof in presenting his case. The revision, which was in effect at the time of trial in this case, redesignated this mechanism as a motion for judgment on partial findings under Rule 52(c). This error in nomenclature is completely harmless, however, for the new label does not alter the nature of the trial court's evaluation. If a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment against that party on any claim that cannot be maintained without a favorable finding on that issue. Fed. R.Civ.P. 52(c). Nor does the amendment affect the reviewing court's role. We review only for clear error. *See Southern Travel Club, Inc. v. Carnival Air Lines, Inc.*, 986 F.2d 125, 128 (5th Cir.1993). We may not disturb the bankruptcy court's findings "unless, based upon the entire record, we are 'left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)). So long as the bankruptcy court's "'account of the evidence is plausible in light of the record,' we will not reverse it—even if convinced that had we 'been sitting as trier of fact, [we] would have weighed the evidence differently.'" *Id.* (quoting *Anderson*, 470 U.S. at 573–74, 105 S.Ct. at 1511.

## B. The Race Discrimination Claim

■ Shaw brings his claim of race discrimination not under Title VII, but under 42 U.S.C. § 1981, § 1983, and § 1985.[1] The

---

**1.** We note initially, although this issue is not raised, that as a matter of law Shaw has no claim under § 1981. The Fifth Circuit, along

with a majority of other circuits, has held that claims of discriminatory discharge are "no longer cognizable under § 1981." *Spiller v. Ella*

framework for deciding an employment discrimination case is the well-established analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Guillory v. St. Landry Parish Police Jury,* 802 F.2d 822, 824 (5th Cir.1986), *cert. denied,* 482 U.S. 916, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987). First, the plaintiff must establish a prima facie case by producing either direct or circumstantial evidence of purposeful discrimination by the defendant. A circumstantial prima facie case can be accomplished by proving that the plaintiff: (1) belongs to a protected class; (2) was qualified for the position; (3) was discharged from the position; and (4) was replaced by a nonminority. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Jatoi v. Hurst–Euless–Bedford Hosp. Auth.,* 807 F.2d 1214, 1219 (5th Cir.), *reh'g denied,* 819 F.2d 545 (5th Cir.1987), *cert. denied,* 484 U.S. 1010, 108 S.Ct. 709, 98 L.Ed.2d 660 (1988). This creates a rebuttable presumption of discriminatory discharge. *See McDaniel v. Temple Indep. Sch. Dist.,* 770 F.2d 1340, 1345–46 (5th Cir.1985). The burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the discharge. *Id.* at 1346. If the defendant accomplishes this, the presumption disappears, and the burden shifts back to the plaintiff " 'to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.' " *Saint Mary's Honor Ctr. v. Hicks,* — U.S. at — —

—, 113 S.Ct. at 2751–52 (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)). Although the presumption shifts the burden of production to the defendant, the plaintiff retains at all times the ultimate burden of persuading the trier of fact that he is the victim of intentional discrimination. *Saint Mary's,* — U.S. at —, 113 S.Ct. at 2747.

The appellant argues that the bankruptcy court erred in finding that he failed to establish a prima facie case. We need not decide this narrow issue, for despite the bankruptcy court's ostensible finding that no prima facie case was established, it went on to decide the ultimate issue—that Shaw was discharged not because of his race, but for nondiscriminatory reasons.[2] This finding was not clear error. With the exception of Shaw's testimony regarding occasional racial jokes told in his presence, the record is devoid of any evidence that Shaw was fired because of his race. Nor was it error for the bankruptcy court to decide this issue at the close of plaintiff's case. Where a defendant "establishes its legitimate nondiscriminatory reason for the adverse employment decision during the plaintiff's case-in-chief, a Rule 41(b) [now Rule 52(c) ] motion is procedurally proper." *McDaniel,* 770 F.2d at 1346–47 n. 3. Here, the defendants were able, through documentary evidence and cross-examination of plaintiff's witnesses, to articulate a nondiscriminatory motive prior to the close of plaintiff's case.[3] The

Smithers Geriatric Ctr., 919 F.2d 339, 345 (5th Cir.1990). Although the Civil Rights Act of 1991 overrules this jurisprudence, the amendment does not apply to conduct occurring prior to its enactment on 21 November 1991. *See Johnson v. Uncle Ben's, Inc.,* 965 F.2d 1363, 1374 (5th Cir.1992). This does not affect our review, however, because § 1983 and § 1985(3) do encompass discriminatory discharge and the standard for proving race discrimination is the same under all three sections. *See, e.g., Saint Mary's Honor Ctr. v. Hicks,* — U.S. —, — n. 1, 113 S.Ct. 2742, 2747 n. 1, 125 L.Ed.2d 407 (1993) (assuming standard is same for § 1981 and § 1983); *Jatoi v. Hurst–Euless–Bedford Hosp. Auth.,* 807 F.2d 1214, 1218 n. 2 (5th Cir.) (issues are same for § 1981 and § 1985 claims), *reh'g denied,* 819 F.2d 545 (5th Cir.1987), *cert. denied,*

484 U.S. 1010, 108 S.Ct. 709, 98 L.Ed.2d 660 (1988).

2. "[W]here the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant." *McDaniel,* 770 F.2d at 1345–46 n. 2 (quoting *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). Here, the defendants were able to articulate, during the plaintiffs case-in-chief, a nondiscriminatory reason for Shaw's discharge.

3. The defendants were also able to rebut the plaintiff's allegation that Shaw was replaced by a nonminority. Although Shaw's position was

plaintiff had ample opportunity before resting his case to show that the proffered reason was a pretext or that a discriminatory motive more likely than not prompted the discharge. He failed to do so.

### C. *The Bankruptcy Discrimination Claim*

 Section 525(a) of the Bankruptcy Code prohibits governmental units from discriminating against a person solely because that person is or has been a debtor under the Bankruptcy Code. 11 U.S.C. § 525(a).[4] The statute does not prohibit consideration of other factors such as financial ability or imposition of financial requirements, so long as they are not applied in a manner that is discriminatory to bankrupts. *See In re Exquisito Serv., Inc.*, 823 F.2d 151, 153 (5th Cir.1987). "Only discrimination based solely on the debtor's status is precluded." *Id.*

The essence of Shaw's section 525 claim is that he was fired because he refused to pay the debt owed to Great American outside the bankruptcy plan. The defendants insist that Shaw was discharged for poor job performance. Specifically, the defendants allege that Shaw was fired for failing to make required inspections after repeated instructions to do so and for failing to comply with a new telephone policy requiring that maintenance employees either have a home telephone or arrange for a fellow employee to handle their after-hours emergency calls. This explanation is supported by Shaw's personnel file, which contains written reprimands (which Shaw claims he never received) and notices reflecting the new telephone policy. The plaintiff's claim, on the other hand, necessarily rests largely on speculation regarding alleged communications behind closed doors. In light of this lack of evidence, the bankruptcy court found at the close of the plaintiff's case that the plaintiff failed to prove by a preponderance of the evidence that he had been discriminated against solely because of his status as a debtor in bankruptcy. While we find it troublesome that the plaintiff's problems on the job seem to have begun shortly after he filed for bankruptcy, we are not the trier of fact. Perhaps if we had heard the witnesses testify and seen their demeanor we would have viewed the evidence differently than the bankruptcy court did. But we may reverse only for clear error. We can find none.

For these reasons, the judgment of the bankruptcy court is **AFFIRMED**.

---

immediately filled by a temporary replacement who was white, the permanent replacement was a black man.

4. The Housing Authority's status as a "governmental unit" is undisputed.