## UNITED STEELWORKERS OF AMERICA, etc., Plaintiff,

v.

## SIMCALA, INC., Defendant.

### Civil Action No. 97–T–151–N.

United States District Court,
M.D. Alabama,
Northern Division.

July 15, 1997.

Richard P. Rouco, Cooper, Mitch, Crawford, Kuydendall & Whatley, Birmingham, AL, for Plaintiff.

James N. Nolan, Lange, Simpson, Robinson & Somerville, Birmingham, AL, for Defendant.

1. Basic Labor Agreement and Seniority Rules and Regulations between Simcala, Inc. and Unit-

## MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

This lawsuit was brought by plaintiff United Steelworkers of America, AFL–CIO–CLC (the "USWA"), individually and on behalf of Local Union 8538, against defendant Simcala, Inc., to compel arbitration of union grievances in accordance with the terms and procedures of a collective bargaining agreement in effect between the parties.[1] Jurisdiction is proper under § 301(a) of the Labor Management Relations Act, 29 U.S.C.A. § 185(a). This lawsuit is now before the court on USWA's motion for summary judgment. For the reasons that follow, the motion will be granted.

## I.  SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing how the responsibilities on the movant and the nonmovant vary depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or nonmovant bears the burden of proof at trial). In making its determination, the court must view all evidence and any factual inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II.  BACKGROUND

The USWA brought a set of grievances against Simcala for alleged violations of various terms of the collective bargaining agree-

ed Steelworkers of America (AFL–CIO), August 15, 1995, effective until August 8, 2000.

ment, affecting members of Local 8538 at Simcala's facility in Mt. Meigs, Alabama. The grievances were pursued according to the step-by-step procedures specified in the agreement.[2] Raymond League, the USWA's staff representative responsible for servicing Local 8538, received Simcala's third-step response denying these grievances on August 1, 1996. On August 5, 1996, League attempted to notify Simcala in writing that the USWA was requesting arbitration of these grievances, according to Article 11, Step 4 of the procedures, which provides: "If the union wishes to appeal the disposition made in Step 3 of any grievance, a representative of the Union shall mail to the Company a written notice of appeal of such grievance to arbitration, within ten (10) days from such disposition." On August 13, 1996, League wrote again to Simcala's director of human resources, enclosing additional forms. The director wrote back, acknowledging receipt of the August 13 letter on or about August 14, but denying receipt of the August 5 letter, and refusing to arbitrate on the ground that USWA's notification was untimely. At no time has Simcala ever challenged the arbitrability of USWA's substantive complaints under the collective bargaining agreement.

USWA argues that its appeal to arbitration was timely in either of two respects: first, it maintains that the 10–day requirement in the agreement refers to business,

and not calendar, days, and that, therefore, both the August 5 letter and the August 13 follow-up letter were sent within ten business days of the Step 3 disposition; second, even if Simcala's view that the 10–day requirement refers to calendar days were to prevail, the August 5 letter was still sent, and received, well within the required deadline.

USWA commenced this action to compel arbitration of its grievances on February 10, 1997, and, on June 2, 1997, moved for summary judgment on the issue of whether the dispute over the timeliness of its request for arbitration must be arbitrated. That motion is now before the court.

### III. DISCUSSION

The sole issue before the court on USWA's motion for summary judgment is whether the court, or the arbitrator, should hear the dispute between the parties over whether USWA's appeal to arbitration of its original set of grievances against Simcala was timely brought, pursuant to the procedural requirements of the collective bargaining agreement. Simcala argues, first, that there is no legitimate dispute over timeliness; second, that any dispute over timeliness begins a new and separate grievance that must follow the entire grievance procedure; and third, that the parties agreed in the collective bargaining

**2.** The collective bargaining agreement provides, in relevant part:

"11.1 Should differences arise between the Company and the Union as to the meaning and application of the provisions of this Agreement or should any trouble of any kind arise in the plant, there should be no suspension of work or refusal to perform the duties assigned, on account of such differences, but an earnest effort shall be made to settle such differences immediately in the following manner:
Step 1
A. Grievances or complaints must be reported within five (5) days from the date of occurrence. Grievances or complaints not adjusted within fifteen (15) days of occurrence or within fifteen (15) days (excluding Saturdays, Sundays and holidays) of the date the employee or employees or Committee become aware of the occurrence ... shall be reduced to writing ... and presented to the immediate supervisor before they will be considered further.
\*        \*        \*        \*        \*        \*
Step 4

A. If the Union wishes to appeal the disposition made in Step 3 of any grievance, a representative of the Union shall mail to the Company a written notice of appeal of such grievance to arbitration, within ten (10) days from such disposition.

\*        \*        \*        \*        \*        \*

11.3 Unless an extension of time has been mutually agreed upon by and between the parties:
11.3.1 The parties shall not be under any obligation to discuss any difference unless such difference is submitted within the time limits specified in Article 11.
11.3.2 If a grievance is not appealed from one stage of negotiation to the next higher stage of negotiation within the specified time limits, or if a written notice of intention to appeal a grievance has not been given within such time limits, such grievance shall be considered settled on the basis of the last answer which has been made."

agreement not to arbitrate untimely grievances.

### 1.

The substantive dispute over timeliness—namely, whether or not USWA's notice of appeal to arbitration was, in fact, sent within the time periods specified in the collective bargaining agreement—is a matter that must be decided by whichever body, court or arbitration panel, the court finds, according to the language of the agreement, that the parties have agreed should hear that dispute, as will be explained and discussed more fully below. That issue is not properly before the court at this point. If the timeliness dispute were one for the court to decide, then the court would be obligated to hear it during the trial now set for a later time. However, because the court concludes that the issue should be heard by an arbitration panel, the court will grant the pending summary-judgment motion and compel Simcala to arbitrate the issue.

### 2.

Simcala admits, in ¶ 19 of its answer to the complaint, that timeliness of an appeal to arbitration under the collective bargaining agreement is an arbitrable issue, but contends that once it communicated its position to USWA—that the appeal for arbitration of the original grievances was untimely filed—USWA was required, but failed, to file a separate, timely grievance with regard to the timeliness issue. This position is without merit.

In *AT & T Techs., Inc. v. Communications Workers of America*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), the Supreme Court enunciated a set of principles on arbitrability of labor disputes, which have guided courts for a decade since. *See, e.g., First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). The first, oft-repeated principle, or maxim, is that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *AT & T.*, 475 U.S. at 648, 106 S.Ct. at 1418 (citation omitted). The second principle is that the question of what issues the parties have agreed to arbitrate is for the court to decide, unless the parties have un-

equivocally agreed otherwise. *Id.* at 649, 106 S.Ct. at 1418. *See also John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546–47, 84 S.Ct. 909, 912–13, 11 L.Ed.2d 898 (1964). The third principle is that "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT & T*, 475 U.S. at 649, 106 S.Ct. at 1419.

Simcala does not directly challenge the *AT & T* principles. If the court were to decide the question whether USWA must bring a separate grievance over the timeliness issue, it would be crossing the line drawn by the Supreme Court, between deciding the underlying merits and addressing the question of arbitrability. Turning from the question whether the parties agreed to arbitrate a dispute over timeliness, to the question whether, under the collective bargaining agreement, a dispute over timeliness constitutes a separate, substantive grievance, would require the court to decide, on the merits, whether, under the grievance procedure of the agreement, the USWA was required to file a separate grievance over the timeliness issue. That is essentially what Simcala is charging, and the court would be interpreting the substantive provisions of the collective bargaining agreement to address Simcala's argument. That is not the same as deciding arbitrability, that is, in this case, whether the parties agreed to arbitrate disputes over whether the collective bargaining agreement requires them to file a separate grievance when timeliness is contested. Under *AT & T*, that is the only question the court is empowered to decide.

When arguing that its appeal to arbitration was timely brought, the USWA at no time suggests that it is putting forward a new grievance against Simcala by claiming a new violation of the collective bargaining agreement. Simcala is asking the court to decide that the grievance procedure in the agreement requires that whenever a procedural defense is raised regarding a grievance that is itself subject to arbitration, the raising of that defense transforms the procedural issue into a separate grievance. If the court were to decide that that is so, and Simcala could

turn every procedural defense, at every stage, into a separate grievance, this would multiply the procedural stages required to resolve a dispute *ad infinitum.* That is hardly a result the Supreme Court could have intended when it said that "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT & T,* 475 U.S. at 650, 106 S.Ct. at 1419 (quoting *United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353–54, 4 L.Ed.2d 1409 (1960)).

The peculiarity of the arbitration provision in the collective bargaining agreement is that it is not set off as a separate provision, but is merely one stage of a dispute resolution procedure covering "differences ... between the Company and the Union as to the meaning and application of the provisions of this Agreement or ... trouble of any kind [that] arise[s] in the plant." In this case, resolving doubts in favor of arbitration means finding that collateral, arbitrable disputes that arise in the course of following the grievance resolution or adjustment procedure all the way through to Step 4, the stage of arbitration, should be arbitrated as well, without returning to Step 1 and starting over again, because it is anything but indubitably clear that the parties intended such recursive duplication of procedure.

### 3.

Finally, while the parties certainly agreed explicitly in the collective bargaining agreement not to arbitrate untimely grievances, Article 11.3.2, that is not at all to say that they have agreed not to arbitrate disputes over timeliness. Simcala's argument that this case falls within one of the exceptions carved out by courts interpreting *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), is therefore misplaced.

In that case, Wiley, the employer, complained that the union did not follow each step in the grievance procedure, and thus should not be able to compel it to arbitrate. In fact, Wiley complained that the union failed to comply with a provision in the bargaining agreement which stated that: "'Notice of any grievance must be filed with the Employer and with the Union Shop Steward within four (4) weeks after its occurrence or latest existence. The failure by either party to file the grievance within this time limitation shall be construed and be deemed to be an abandonment of the grievance.'" *Id.* at 556 n. 11, 84 S.Ct. at 918 n. 11. Furthermore, Wiley urged "that the question whether 'procedural' conditions to arbitration have been met must be decided by the court and not the arbitrator." *Id.* at 556, 84 S.Ct. at 918.

The Supreme Court dealt with this issue head on in order to resolve what was then a split among the courts of appeals. The Court concluded: "Although a party may resist arbitration once a grievance has arisen, ... we think it best accords with the usual purposes of an arbitration clause and with the policy behind federal labor law to regard procedural disagreements not as separate disputes but as aspects of the dispute which called the grievance procedures into play." *Id.* at 559, 84 S.Ct. at 919. The Court explained:

"We think that labor disputes of the kind involved here cannot be broken down so easily into their 'substantive' and 'procedural' aspects. Questions concerning the procedural prerequisites to arbitration do not arise in a vacuum; they develop in the context of an actual dispute about the rights of the parties to the contract or those covered by it. . . .

"Doubt whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration. . . . It would be a curious rule which required that intertwined issues of 'substance' and 'procedure' growing out of a single dispute and raising the same questions on the same facts had to be carved up

between two different forums, one deciding after the other. Neither logic nor considerations of policy compel such a result. "Once it is determined, as we have, that the parties are obligated to ·submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator. Even under a contrary rule, a court could deny arbitration only if it could confidently be said not only that a claim was strictly 'procedural,' and therefore within the purview of the court, but also that it should operate to bar arbitration altogether, and not merely limit or qualify an arbitral award. In view of the policies favoring arbitration and the parties' adoption of arbitration as the preferred means of settling disputes, such cases are likely to be rare indeed.... Reservation of 'procedural' issues for the courts would thus not only create the difficult task of separating related issues, but would also produce frequent duplication of effort.

"In addition, the opportunities for deliberate delay and the possibility of well-intentioned but no less serious delay created by separation of the 'procedural' and 'substantive' elements of a dispute are clear. While the courts have the task of determining 'substantive arbitrability,' there will be cases in which arbitrability of the subject matter is unquestioned but a dispute arises over the procedures to be followed. In all of such cases, acceptance of Wiley's position would produce the delay attendant upon judicial proceedings preliminary to arbitration ... [and] such delay may entirely eliminate the prospect of a speedy arbitrated settlement of the dispute, to the disadvantage of the parties (who, in addi-

tion, will have to bear increased costs) and contrary to the aims of national labor policy.

"No justification for such a generally undesirable result is to be found in a presumed intention of the parties. Refusal to order arbitration of subjects which the parties have not agreed to arbitrate does not entail the fractionating of disputes about subjects which the parties do wish to have submitted."

*Id.* at 556–59, 84 S.Ct. at 918–19.

The Supreme Court's concerns are eminently applicable here, where there is no dispute over whether the grievance and arbitration procedure covers the substantive grievances brought by the USWA, and thus these grievances must be heard, if at all, by the arbitrator. Given that the bargaining agreement itself is ambiguous about whether the ten-day notice requirement refers to calendar or business days, and that it is disputed whether the employer received the USWA's first written attempt to provide notice of an appeal to arbitration,[3] "neither logic nor considerations of policy compels" the conclusion that these issues be "carved up between two different forums, one deciding after the other." *Id.* at 557, 84 S.Ct. at 918. It is also not too farfetched to infer that the employer might be strategically relying on a purely procedural defense to the USWA's claims in order to 'fractionate' the dispute and, ultimately, avoid arbitration, with all the delays, costs, and inconveniences concomitant therewith.[4]

Simcala, while recognizing the holding of *Wiley,* seeks to characterize this case as one of the 'rare exceptions' contemplated by that Court, in that the dispute is purely procedural and dispositive of the arbitration issue.[5]

---

3. Other copies of the notice of arbitration were allegedly mailed simultaneously with the letter to the employer, and were received by USWA officials well within the required period, and an affidavit presented by the USWA represents that the employer acknowledged receipt of that letter in a telephone conversation that took place within the notice period, before denying receipt in a letter to the USWA after the expiration of the notice period.

4. In its brief, Simcala not only straightforwardly argues the merits of the dispute over timeliness,·

but also urges the court to resolve any and all substantive issues pertaining to the underlying grievances that may be requisite for deciding the jurisdiction of the arbitrator in this case. Memorandum in Opposition to USWA's Motion for Summary Judgment, filed on June 27, 1997, at 10–11.

5. Of course, the *Wiley* court never set out such a rule; it merely hypothesized about how it would proceed were it, alternatively, to adopt such a 'contrary' rule. *Wiley,* 376 U.S. at 557–58, 84 S.Ct. at 918.

Simcala may be correct that in this case the dispute over timeliness is not closely interwoven with any dispute over the merits of the claims that would be arbitrated. However, the far-reaching policy guiding the *Wiley* decision is directly pertinent to this case, regardless of whether, in theory, the underlying grievance and the procedural dispute *could* be decided severally. Simply put, federal arbitration policy dictates that any doubts and ambiguities about which forum should hear an issue or claim must be resolved in favor of arbitration. *AT & T,* 475 U.S. at 650, 106 S.Ct. at 1419; *Aluminum Brick and Glass Workers Intern. Union v. AAA Plumbing Pottery Corp.,* 991 F.2d 1545, 1549 (11th Cir.1993).

There are but few situations in which courts, after *Wiley,* have held that 'procedural' disputes need not be sent to arbitration. One such situation is where it is uncontested that the union did not meet the deadline to request arbitration, so that there is no dispute at all over procedure. In *United Steelworkers of America, AFL–CIO–CLC v. Cherokee Elec. Co-op.,* No. 86–AR–2163–M, 1987 WL 17056 (N.D.Ala. Feb.19, 1986), *aff'd,* 829 F.2d 1131 (11th Cir.1987) (table), *cert. denied,* 485 U.S. 1038, 108 S.Ct. 1601, 99 L.Ed.2d 915 (1988), the union claimed that the court could not address the issue of timeliness, even where no material, factual dispute existed, when the arbitration agreement referred broadly to all disputes arising from the bargaining agreement. The court held that, in the absence of *any* dispute over timeliness, it was within the purview of the court's responsibility and duty to decide what issues the parties agreed to arbitrate, to read the collective bargaining agreement provision which specifically says that untimely appeals shall be considered settled, as an agreement between the parties not to arbitrate disputes they agree were not filed in a timely manner. *Id.* at *3–*4. That is obviously not the case here, where evidence, in the form of affidavits, along with passages from the collective bargaining agreement itself, presents a colorable dispute about whether the arbitration appeal was timely filed.

Another kind of case is where no attempt is made to follow the grievance procedure at all, let alone the ultimate or penultimate step in the procedure of requesting arbitration. *See, e.g., Congreso de Uniones Industriales de Puerto Rico v. V.C.S. Nat'l Packing Co., Inc.,* 953 F.2d 1 (1st Cir.1991). In *Congreso de Uniones Industriales,* the court simply ruled that there was no grievance to submit to arbitration, so the procedural arbitrability question never properly arose. *See also Philadelphia Printing Pressmen's Union No. 16 v. International Paper Co., Single Serv. Div.,* 648 F.2d 900, 904 n. 7 (3rd Cir. 1981) (union's attempt to skip the entire grievance machinery "is neither procedural nor merely 'literal,' it is total, thereby preventing the dispute from ripening into a grievance"). This was like saying, by analogy, that there is no case or controversy for an Article III court to hear. That is also not at all like our case. *Cf. Becton Dickinson and Co. v. District 65, United Auto. Aero. and Agric. Implement Workers of America, AFL–CIO,* 799 F.2d 57, 60 (3rd Cir.1986).

Even *General Drivers, Warehousemen and Helpers, Local Union 89 v. Moog Louisville Warehouse,* 852 F.2d 871 (6th Cir.1988), cited by Simcala, does not cut against the *Wiley* rule, because the *ratio decidendi* of the divided panel there was that the arbitration agreement itself contained a provision explicitly excluding from arbitration this kind of procedural dispute over timeliness, and, of course, the agreement of the parties is controlling with respect to what issues are arbitrable, *AT & T,* 475 U.S. at 648, 106 S.Ct. at 1418, and the court has the duty to determine their intentions by interpreting the agreement, *id.* The court distinguished the clause it interpreted—"if the union fails to notify the Company . . . within 15 calendar days after the Company gives its answer in writing to a grievance at Step (b) . . . then the Union shall be conclusively presumed to have accepted the Company's answer thereto and said grievance *shall not thereafter be arbitrable,*" *Local Union 89,* 852 F.2d at 873—which it understood to ban directly arbitration of procedural disputes over timeliness, from one simply stating that an untimely claim "would be deemed abandoned." *Id.* at 874.

There is no comparable explicit language in the collective bargaining agreement grievance procedure in this case that would exclude disputes over timeliness. Here, the agreement states that, if the time limits for each stage of the grievance procedure are not followed, the "parties shall not be under any obligation to discuss any difference," and any grievance "shall be considered settled on the basis of the last answer which has been made." Neither of these provisions can be reasonably understood to bar expressly arbitration of disagreements about whether the time limits have or have not been properly observed.

### IV. CONCLUSION

For all these reasons, the court concludes that the issue of whether the USWA procedurally defaulted its appeal to arbitration under the collective bargaining agreement with Simcala must be decided by arbitration, in the manner prescribed in that agreement.

An appropriate judgment will be entered.