**Dr. John G. MADRY, Jr.,
Plaintiff-Appellant,**

v.

**Dr. Otto G. SOREL et al.,
Defendants-Appellees.**

No. 76–1495.

United States Court of Appeals, Fifth Circuit.

Aug. 29, 1977.

Rehearing and Rehearing En Banc Denied Sept. 30, 1977.

Theodore M. Forbes, Jr., Atlanta, Ga., Wm. H. Gleason, Indialantic, Fla., Thorwald J. Husfeld, J. Compton French, DeLand, Fla., for plaintiff-appellant.

Ralph Geilich, Melbourne, Fla., for E. Mangone.

Elting L. Storms, Melbourne, Fla., for Brevard Hosp., et al.

James C. Rinamon, Jr., Jacksonville, Fla., for Blackburn & McMillan.

**304**

Peirce Wood, Melbourne, Fla., for Dr. Otto G. Sorel.

Otto G. Sorel, pro se.

Before THORNBERRY, GODBOLD and FAY, Circuit Judges.

FAY, Circuit Judge:

The plaintiff-appellant, Dr. John G. Madry, Jr., joined the staff of Brevard Hospital on January 1, 1961. In May of 1966, Dr. Madry was "permanently suspended" from staff privileges by the Board of Governors of the hospital after a series of alleged violations of hospital rules—the last of which was the sterilization of a county welfare patient apparently without her written consent. Dr. Madry filed this action on June 27, 1969 claiming he had been denied the due process of law guaranteed by the Fourteenth Amendment when he was discharged from the medical staff without notice or a hearing. Doctor Madry sought a declaratory judgment, a permanent injunction, reinstatement to the hospital medical staff, and damages in excess of $1,000,000. After protracted litigation, the district court on February 17, 1976 dismissed this case for lack of federal jurisdiction. The principle issue to be decided on appeal is whether actions by a private, non-profit hospital which admittedly has received some financial assistance from federal and local governments should be considered "state action" as that term is used in the context of the Fourteenth Amendment. We agree with the district court, and hold that the actions of Brevard Hospital do not equal state action, and, consequently, the district court lacked jurisdiction to hear this case.

 In order to set forth a cause of action under the Fourteenth Amendment, is is necessary to allege that one's constitutional rights were infringed upon as a result of "state action" since the Fourteenth Amendment does not prevent invidious discrimination by private parties. Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883). The inquiry which must be made in this case, therefore, is whether there is a sufficiently close nexus between the state and the Brevard Hospital so that the actions of the latter may be fairly treated as that of the state itself. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).

Twice before this Court has had the opportunity to examine exactly what state action significance to attach to the various activities of public and private hospitals. *See Greco v. Orange Memorial Hospital Corp.,* 513 F.2d 873 (5th Cir. 1975), and *Sosa v. Board of Managers of Val Verde Memorial Hospital,* 437 F.2d 173 (5th Cir. 1971). In *Sosa,* a doctor was challenging his denial of admission to the medical staff of Val Verde Memorial Hospital. Val Verde Memorial Hospital was a county hospital established pursuant to Texas law. *See* Vernon's Ann.Tex.Rev.Civ.Stat. arts. 4478 to 4494r–3. The hospital was constructed and maintained with county funds supplemented by federal aid under the Hill-Burton Act, 42 U.S.C. § 291 *et seq.* The governing board of Val Verde was appointed by the County Commissioners of Val Verde County. This court held that the Val Verde Memorial Hospital was a public body receiving both state and federal funds and, therefore, the acts of the hospital were state acts which must comport with the Fourteenth Amendment. In *Greco,* a different situation was presented. Dr. Greco was challenging a policy adopted by the hospital's board of directors preventing further use of the hospital's facilities for the performance of non-therapeutic abortions. This court held that the actions of the Orange Memorial Corporation, a private, non-profit, tax exempt corporation, did not equal "state action". This result was reached even though the hospital was built with federal and county funds, and was leased to the corporation for the nominal sum of $1 per year. The holding rested upon the fact that the local and federal governments had little to do with the actual running of the hospital. The corporation consisted of life and advisory members from which a board

of directors was elected. The board of directors was the ultimate authority in determining hospital policy and acted independent of any influence from Orange County. In fact, the lease between Orange County and the hospital explicitly provided that the *lessee* would prescribe the terms and regulations of medical care given in the facility. Given this factual setting, this Court held:

> In summary, we find that Orange County is not sufficiently connected with the Orange Memorial Hospital Corporation's activities to imbue those actions with the attributes of the state. The involvement of the County is not sufficiently related to the corporation's decision to prohibit elective abortions to justify the imposition of Constitutional restrictions upon the daily business of the hospital. Absent a charge of racial discrimination we are disinclined to press the state action doctrine and all that it entails into the internal affairs of a hospital. Moreover we do not perceive Orange Memorial Hospital as an entity exercising peculiarly governmental functions which might, in the absence of constitutional restrictions, be employed in derogation of a citizen's fundamental rights.

*Greco v. Orange Memorial Hospital,* 513 F.2d 873, 882 (5th Cir. 1975).

The plaintiff contends that our holdings in *Sosa* and *Greco* are inconsistent. We do not agree. The Val Verde Memorial Hospital was a hospital owned and operated by the county. The policy decisions of the hospital were made by a board which consisted of members appointed by the Val Verde County Commission. On the other hand, Orange Memorial Hospital was a private hospital which was operated by a board which was independent of Orange County. The sole fact that the hospital had received a significant amount of local and federal funding was not sufficient to subject the acts of the hospital to the restraints of the Fourteenth Amendment.

▇ Given this legal background, it readily becomes apparent that the case before us is controlled by our decision in *Greco* and that the actions of the Brevard Hospital do not have to fall within the parameters of the Fourteenth Amendment. Brevard Hospital is a private, non-profit, tax exempt hospital. While it is true that the land upon which the hospital was built was purchased from the city of Melbourne, Florida for a nominal price, the hospital itself was paid for with funds received from a public fund-raising drive and through the use of federal Hill-Burton funds. All additions to the Brevard Hospital have been paid for primarily with donations from the public, Hill-Burton funds, and a mortgage loan from a savings and loan association. The hospital itself admits that it has received financial support from the local and federal governments, but the hospital correctly asserts that the receipt of financial assistance, in and of itself, is not a sufficient nexus to make the acts of the hospital equal the acts of the state.

Dr. Madry attempts to distinguish his case from *Greco,* and to establish the requisite state action, by pointing out that the Brevard Hospital's by-laws allowed two Brevard County Commissioners and the mayors of nine Brevard County municipalities to serve as *ex officio* members of the Board of Governors of the hospital. The plaintiff contends that this fact likens his situation to the situation found in *Sosa* in which the local government actually played a policy-making role in the running of the Val Verde Hospital. We disagree. Dr. Madry seems to overlook the actual manner in which the Brevard Hospital functions. In addition to the *ex officio* members the Board of Governors was composed of twelve persons who were elected from the membership of the hospital corporation. There was evidence before the Court that no *ex officio* member had ever participated as a member of the Board, and that the Board acted independent of the City of Melbourne and Brevard County. In actuality, *ex officio* status was most likely granted the holders of the various political offices as an attempt to improve the hospital's public relations. But, regardless of the reasons for granting the *ex officio* status, there was in fact insufficient public control

over the running of the hospital to render the actions of the hospital that of the state. The *ex officio* members of the Board served (and we use the word "serve" in its loosest sense) at the grace of the private corporation, and they could be removed by a by-law amendment of the corporation without the consent of the Florida Legislature, the Brevard County Commissioners or the officials of the various Brevard County municipalities. This step was in fact taken some time after the dismissal of Dr. Madry, so that presently there are no public officials serving as *ex officio* members of the Board. Also, the plaintiff has brought before us no evidence whatsoever which indicates that any public official, at any time, actually participated as a member of the Board of Governors. There is evidence in the record that no *ex officio* member had ever attended a hospital board meeting.[1] Our decision in this case might be very different if there was some indication that the *ex officio* members had some purpose other than a ceremonial one, and that they actually participated to some extent in the running of the hospital. Absent such an allegation by the plaintiff, we are not willing to confine the actions of an otherwise private hospital to the restraints of the Fourteenth Amendment.

Dr. Madry raises one other error on appeal.[2] He contends that the trial judge erred in denying his motion of January 22, 1976 to amend his complaint in order to add a new count based on a violation of the Federal Anti-Trust laws. Dr. Madry admits that he filed this motion largely because he anticipated the dismissal of his case for lack of jurisdiction, and because he realized that the statute of limitations had long since run on this cause of action insofar as a new suit was concerned. We hold that the trial judge did not abuse his discre-

tion in denying the plaintiff's motions. The proposed amendment was proffered almost seven years after this litigation had begun, and after the court had twice before granted the plaintiff leave to amend his complaint. If untimeliness is ever a justification for denying a motion to amend, this is the case. Consequently, the judgment of the district court is AFFIRMED in all respects.

---

1. The affidavit of the hospital administrator (App. p. 648) clearly indicates that the municipal and county officials never participated as members of the Board and had never attended a board meeting since October, 1952, the date of the administrator's employment.

2. The appellant did raise a third error on appeal regarding the trial judge's failure to grant

his motions to set aside the then pending "plan" to afford plaintiff a due process hearing, and to disqualify for bias certain members of the panel who were to serve as the forum for that hearing. These points, however, were rendered moot by our decision that the trial court lacked jurisdiction over the case.