A.M. JATOI, MD, Plaintiff-Appellant,

v.

HURST–EULESS–BEDFORD HOSPITAL AUTHORITY, et al., Defendants-Appellees.

No. 85–1745.

United States Court of Appeals, Fifth Circuit.

Jan. 14, 1987.

Art Brender, Law Offices of Art Brender, Ft. Worth, Tex., for plaintiff-appellant.

William B. Schur, Tom B. Renfro, Wynn, Brown, Mack, Renfro & Thompson, Ft. Worth, Tex., for defendants-appellees.

Before CLARK, Chief Judge, REAVLEY and WILLIAMS, Circuit Judges.

CLARK, Chief Judge:

Plaintiff, Dr. Alimadad Jatoi, appeals the district court's judgment in favor of the defendants, Hurst-Euless-Bedford (HEB) Hospital Authority, HEB Hospital Medical Board, HEB Hospital Board of Trustees, and Methodist Affiliated Hospitals.[1] Dr. Jatoi sued the defendants under 42 U.S.C. §§ 1981, 1983 and 1985 alleging they discriminated against him by terminating his medical staff privileges on the basis of his national origin and alienage, and that the termination procedures denied him due process. The district court granted the defendants' summary judgment on the section 1983 claim on the ground there was no state action. The remainder of the case was tried without a jury. At the close of Dr. Jatoi's case, the defendants moved for dismissal of the § 1981 and § 1985 claims under Federal Rule of Civil Procedure 41(b). The district court granted the motion on the ground that Dr. Jatoi had not established a prima facie case of discrimination. Dr. Jatoi appealed. We reverse both the grant of summary judgment on the § 1983 claim, and the dismissal of the § 1981 and § 1985 claims.

## I. BACKGROUND

The HEB Hospital Authority is a municipal corporation created by Texas statute. The Authority has the power to construct and manage a hospital, with the right to issue bonds to raise revenues. The Authority raised the necessary funds and constructed the HEB hospital.

The Authority began operation of the hospital in 1973, but due to financial difficulties, in 1974 the Authority entered into an agreement with Harris Hospital-Methodist (Harris) to provide additional funds and assume operation of the hospital. Harris created a new, non-profit corporation, HEB Hospital, and appointed the hospital's Board of Trustees. The Authority leased the hospital to the new corporation. After this claim arose, the Authority sold the hospital to Harris.

The HEB Hospital Board of Trustees is the decision-making body for management of the hospital. The hospital has a Medical Board composed of doctors from the various medical departments. The Medical Board makes recommendations to the Board of Trustees on decisions affecting medical personnel. The Board of Trustees then makes the actual decision. If requested, the Board of Trustees reported its personnel decisions to the HEB Hospital Authority. It also submitted financial reports to the Authority. The Authority continued to raise revenues for the hospital.

Dr. Jatoi was born in Pakistan and received his medical training in India and in England, where he was certified as a general surgeon. He considers himself an East Indian. In 1967 Dr. Jatoi became a United States citizen. When the HEB Hospital opened in 1973, Dr. Jatoi was admitted to the medical staff with general surgery privileges.

Dr. Jatoi's emergency room trauma privileges were restricted in 1975 and he was later required to have a consultation before performing appendectomies. At one point the hospital Administrator told Dr. Jatoi that the Chief of Staff was restricting Jatoi's privileges because "this doctor is a bigot." At another time, a member of the Medical Board, Dr. Alldredge, told one of Dr. Jatoi's patients, "I guess they think they'll have an American doctor that could do something for you."

1. The defendants assert that Methodist Affiliated Hospitals had nothing to do with this case and should not be a defendant. They have not, however, made a motion on that issue. The defendants also assert that the Authority and the Medical Board were never served with notice of process and therefore did not file answers in this case. Again there is no indication in the record that this issue was raised in the trial court and the defendants mention it without elaboration in their brief to us. We leave it to the district court to address these issues in the first instance when and if they are properly raised.

Doctors at the hospital were reviewed and considered for reappointment to the staff every two years. When Dr. Jatoi was reviewed in 1981, the Medical Board recommended to the Board of Trustees that he not be reappointed. Dr. Jatoi appealed this recommendation and was given a hearing by the Medical Board. Before the hearing he was given a "Fact Summary" listing some of his patients and the treatment he had given them. He was not told what questions would be raised about the treatment of these patients. Dr. Jatoi asserts he was not allowed to have a lawyer cross-examine witnesses at the hearing and was not allowed to bring in any medical witness who was not a member of the local Medical Society.

A month after the hearing, the Medical Board decided to uphold its recommendation not to reappoint Dr. Jatoi and the hospital's Board of Trustees adopted that recommendation. This decision was communicated to the Hospital Authority. Dr. Jatoi then brought this action.

## II. SECTION 1981 AND 1985 CLAIMS

### A. Racial Discrimination

The defendants launch two basic attacks on Dr. Jatoi's claims under 42 U.S.C. § 1981 and § 1985:[2] (1) they assert Dr. Jatoi is not a member of a protected group under § 1981; and (2) they assert his claim is improper because it is based on national origin and alienage rather than race.

The defendants argue that East Indians are not a protected group under § 1981, presumably because anthropologists classify East Indians as caucasians. We note at the outset that the Supreme Court has held that § 1981 protects caucasians as well as minorities from discrimination on the basis of their race. *McDonald v. Sante Fe Trail*

**2.** The issues are the same for the § 1981 claim and the § 1985 claim. We will, therefore, explicitly discuss only the § 1981 claim but our discussion applies to § 1985 as well.

**3.** The defendants also assert Dr. Jatoi is not in a protected group because roughly 30% of the medical staff at HEB Hospital is East Indian. This argument is completely illogical. Racial

*Transportation Co.*, 427 U.S. 273, 287–96, 96 S.Ct. 2574, 2582–86, 49 L.Ed.2d 493 (1976).

Furthermore, this circuit has refused to limit the protection of § 1981 to taxonomically defined racial groups. *Alizadeh v. Safeway Stores, Inc.*, 802 F.2d 111, 115 (5th Cir.1986) (adopting the analysis in *Al-Kyazraji v. Saint Francis College*, 784 F.2d 505, 514–18 (3d Cir.1986)). To come within § 1981, a plaintiff need only allege he suffered discrimination based on his membership in a group that is commonly perceived to be "racial" because it is ethnically and physiognomically distinct. *Id. Al-Khazraji* interprets the statute to mandate that all persons be treated equally without regard to color or race. A label cannot control the substance of an action if we are to be obedient to the legislative purpose of § 1981. Dr. Jatoi's assertion that he is East Indian is sufficient to put him within the statute's protection.[3]

The defendants also contend that Dr. Jatoi must explicitly plead he suffered *racial* discrimination in order to state a claim under § 1981. We have recognized the difficulty in distinguishing discrimination based on national origin from that based on race. *Bullard v. Omi Georgia, Inc.*, 640 F.2d 632, 634 (5th Cir.1981). Consistency requires that our analysis regarding the definition of a protected group control this issue as well. When a plaintiff asserts he has suffered discrimination based on his membership in a group that is commonly perceived as "racial" because it is ethnically and physiognomically distinct, we will treat the case as asserting a claim under § 1981 whether he labels that discrimination as based on "national origin" or on "race."

discrimination can occur in situations where a large percentage of the employees are members of the same racial group as the plaintiff. The plaintiff may have a more difficult task in proving discrimination under such circumstances, but that difficulty does not deny the plaintiff status as a part of a protected group.

In this case, Dr. Jatoi was clearly not asserting the alleged discrimination was based on his birth in the nation of Pakistan. Dr. Jatoi considered Dr. Gandhi, who was born in India, to be a member of the same group. Dr. Jatoi was asserting the discrimination was based on his East Indian ethnic and physiognomic status, not on national boundaries. He has, therefore, stated a claim under § 1981.

Dr. Jatoi also asserted he suffered discrimination based on alienage. We have permitted claims based on alienage to be brought under § 1981. *Ramirez v. Sloss*, 615 F.2d 163, 167 n. 5 (5th Cir.1980). There is no foundation for this claim in this case, however, because Dr. Jatoi is a United States citizen.

### B. Prima Facie Case

The district court held that Dr. Jatoi had failed to establish a prima facie case of discrimination under 42 U.S.C. § 1981. That ruling is too incomplete to affirm.

To establish a prima facie case under section 1981, a plaintiff must produce direct or circumstantial evidence of purposeful discrimination by the defendant. *Ramirez v. Sloss*, 615 F.2d 163, 168 (5th Cir.1980). The four criteria from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) are sufficient to establish a circumstantial prima facie case. *Chaline v. KCOH, Inc.*, 693 F.2d 477, 480 (5th Cir.1982) (applying *McDonnell Douglas* to claims under 42 U.S.C. § 1981). In the context of an employment discharge case, the four *McDonnell Douglas* steps are: (1) the plaintiff belongs to a protected group; (2) the plaintiff was qualified for a particular position; (3) the plaintiff was discharged from that position; and (4) the plaintiff was replaced by a nonminority. *McDonnell Douglas*, 93 S.Ct. at 1824; *Chaline*, 693 F.2d at 480.

While proof of all four of the *McDonnell Douglas* criteria will establish a circumstantial prima facie case, such proof is not the exclusive means of establishing a plaintiff's preliminary burdens.

In *Byrd v. Roadway Express, Inc.*, 687 F.2d 85, 86 (5th Cir.1982) the plaintiff established the first three criteria but could not establish the fourth because his position had been filled by another minority. As we stated in *Byrd*, "[t]he focus of the inquiry may not be obscured by the blindered recitation of a litany." 687 F.2d at 86. If a plaintiff cannot establish some or all of the *McDonnell Douglas* steps, the district court must examine all the evidence that has been adduced for other indicia of racial discrimination relating to his discharge and determine whether it is more likely than not that the employer's actions were based on illegal discriminatory criteria. *Id.*

In this case it is not clear what criteria the district court used to determine whether Jatoi had established a prima facie case. Although the district court referred to *McDonnell Douglas* as the appropriate standard, the court did not make findings on the four *McDonnell Douglas* criteria, nor did the court explain what other criteria it might have examined.

The defendants contend that Dr. Jatoi did not establish the *McDonnell Douglas* criteria. In particular they contend he did not show he was qualified for the position and did not show he was replaced by a nonminority. Since the district court did not make findings on these issues, we do not pass judgment on them. On remand, the defendants can make these arguments to the district court.

Dr. Jatoi contends that he did not have to establish the *McDonnell Douglas* criteria because he made his prima facie case by direct evidence of discrimination. The district court rejected this contention finding that "At best, Plaintiff's evidence establishes only that Plaintiff and one other member of his racial and national origin group *felt* they were the victims of discrimination." Jatoi points to a statement made by Dr. Alldredge, a member of the Medical Board, to one of Dr. Jatoi's patients in which Dr. Alldredge said, "I guess they think they'll have an American doctor that could do something for you." Dr. Jatoi

also relies on testimony by Dr. Weinberg, another surgeon at HEB Hospital, that race might have been a factor in Dr. Jatoi's termination and statements by doctors Weinberg and Baugh that Dr. Jatoi is a good doctor. He also points to testimony by Dr. Gandhi, a doctor from India, that Dr. Gandhi reduced his use of HEB Hospital because he experienced discrimination there.

To the extent the district court may have held that Dr. Jatoi did not establish a prima facie case through direct evidence, it was correct. The statement by Dr. Alldredge and the testimony of doctors Weinberg, Baugh, and Gandhi are not enough to make it more likely than not that Dr. Jatoi's termination was discriminatorily motivated. *See Furnco Construction Corp. v. Waters,* 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978).

■ The defendants assert that even if Dr. Jatoi did establish a prima facie case, the judgment should be affirmed because in the process of presenting his case Dr. Jatoi produced evidence showing the defendants had non-discriminatory reasons for his termination.[4] The defendants' burden of showing non-discriminatory reasons can be met during the presentation of the plaintiff's case. *McDaniel v. Temple Independent School District,* 770 F.2d 1340, 1346–47 n. 3 (5th Cir.1985); *Lewis v. Brown & Root, Inc.,* 711 F.2d 1287, 1290 n. 3 (5th Cir.1983), *cert. denied,* 464 U.S. 1069, 104 S.Ct. 975, 79 L.Ed.2d 213 (1984). If the district court had made a finding that the defendants had met their burden in this case, we could review that finding. The district court, however, found only that Dr. Jatoi had not established a prima facie case. We cannot make further findings for the trial court.

On remand, if the case is to be decided on the basis of whether a prima facie case has been made, the district court should make findings on each of the *McDonnell Douglas* criteria. If those criteria are not met, the court should search the evidence for other indicia of discriminatory motives and determine if it is more likely than not that Dr. Jatoi's termination was due to illegal discrimination under section 1981.

### III. State Action and 42 U.S.C. § 1983

■ Under 42 U.S.C. § 1983 Dr. Jatoi claimed that the defendants violated his right to due process. The defendants moved for summary judgment on this claim, asserting that the HEB Hospital Authority[5] was not involved in the decision to terminate Dr. Jatoi's privileges, therefore the action was taken solely by private parties and the "state action" requirement of section 1983 had not been met. The district court granted the motion for summary judgment because it erroneously concluded that this case is controlled by *Madry v. Sorel,* 558 F.2d 303 (5th Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978).

*Madry* and the case the *Madry* panel relied upon, *Greco v. Orange Memorial Hospital Corp.,* 513 F.2d 873 (5th Cir.), *cert. denied,* 423 U.S. 1000, 96 S.Ct. 433, 46 L.Ed.2d 376 (1975), are distinguishable from this case. In *Greco,* a doctor sued the Orange Memorial Hospital under section 1983 after the hospital instituted a policy preventing him from performing abortions. The Orange Memorial Hospital was largely funded with public bonds and the county owned both the land and the buildings. A non-profit corporation leased the facilities for a nominal fee and assumed all responsibility for operation of the hospital.

---

4. *McDonnell Douglas,* which analyzed the separate burden shifting steps at each stage of proof, pointed out that once the plaintiff establishes a prima facie case the burden shifts to the defendants to show non-discriminatory reasons for their actions, the plaintiff then has the opportunity to show those reasons are merely a pretext for discrimination. *McDonnell Douglas,* 411 U.S. 792 at 802–05, 93 S.Ct. 1817 at 1824–25; *see*

also *Guillory v. St. Landry Parish Police Jury,* 802 F.2d 822, 824 (5th Cir.1986) (applying the *McDonnell Douglas* steps to claims under 42 U.S.C. § 1981).

5. The defendants admit that the Hospital Authority is a state actor.

The plaintiff in *Greco* asserted the case was controlled by the Supreme Court's decision in *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). In *Burton* the City of Wilmington created the Authority to provide public parking facilities. Public bonds were used to finance construction of a parking garage. The Authority entered into a long term lease with a restaurant in the building, a restaurant that adopted a racially discriminatory policy. The Supreme Court held that the discriminatory policy was "under color of state law" because the restaurant was part of a public building devoted to a public service. The Authority and the restaurant enjoyed a mutually beneficial relationship, making the State a joint participant in the discriminatory activity. 81 S.Ct. at 862.

In *Greco* the panel distinguished *Burton* on the ground that Orange County merely owned the realty and had no control over the operation of the facility. The panel also noted that *Greco* did not involve racial discrimination. 513 F.2d at 879.

In *Madry* a doctor's privileges were suspended after he sterilized a welfare patient without her written consent. The doctor sued the Brevard Hospital, a private hospital that received public funds. He asserted the state action requirement was met because a number of public officials were *ex officio* members of the hospital's Board of Governors. The panel disagreed and held there was no state action because these board members had merely a ceremonial role. 558 F.2d at 306. The panel in *Madry* relied upon *Greco* without discussing *Burton*.

In later cases, the Supreme Court has continued to develop the concept of state action announced in *Burton*. E.g., *Rendell-Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (claim based on violation of right to free speech and due process); *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (claim based on violation of right to due process). *Rendell-Baker* and *Blum* are also distinguishable from the present case because

the defendants in those cases operated private facilities that received some public funds, whereas the HEB Hospital was publicly owned and was entirely constructed with public funds. In *Rendell-Baker* and *Blum* the state did not benefit financially from the private operation of the facility. In this case, repayment of the bonds used to construct the hospital was directly linked to operation of the hospital.

*Burton*, not *Greco* or *Madry*, must be the controlling precedent here. The HEB Hospital Authority, like the Wilmington Parking Authority, is a public corporation created by statute to serve a public purpose. As in *Burton*, the facilities were publicly owned and were constructed with public funds. As in *Burton*, the Authority derived a direct financial benefit from its private lessee. *See Burton*, 365 U.S. at 723, 81 S.Ct. at 861. The Hospital Authority's repayment of the bonds it issued and the mortgages it entered into were dependent on successful operation of the hospital. The Authority continued to finance the hospital through bonds, mortgages and local fundraising. The link between the state and the private manager of the hospital is made especially clear by the fact that the Authority initially operated the hospital itself. The private manager took over a job formerly performed by the state for the public benefit.

Although the Authority had no direct input on day-to-day operation of the hospital, it was informed of decisions, including the decision to terminate Dr. Jatoi's privileges. The defendants contend that the Authority had no control over actions by the private manager. The Authority, however, was the lessor of the facility and continued to hold the purse strings. It monitored the activity of its lessee and retained the ability to prevent or control racial discrimination by its private manager. The Authority cannot benefit from private management of the hospital and at the same time insulate itself from liability for racial discrimination by that manager. The private defendants cannot receive public funds, utilize public facilities, and serve a

public purpose, yet insist that their private status forestalls any correction of a violation of the constitutional rights of their medical staff.

### Conclusion

We reverse the district court's summary judgment on the claim under 42 U.S.C. § 1983. We vacate the district court's judgment that Dr. Jatoi did not establish a prima facie case under 42 U.S.C. § 1981 and § 1985. The cause is remanded for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.