**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1278**

LUIS SORTO,

             Plaintiff - Appellant,

       v.

AUTOZONE, INC.,

             Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Greenbelt.
Roger W. Titus, Senior District Judge.  (8:17-cv-02234-RWT)

Submitted:  March 18, 2020                    Decided:  July 21, 2020

Before NIEMEYER, WYNN, and FLOYD, Circuit Judges.

Affirmed by unpublished opinion.  Judge Niemeyer wrote the opinion, in which Judge
Floyd joined.  Judge Wynn wrote an opinion concurring in the judgment, and dissenting in
part.

Arinderjit Dhali, DHALI PLLC, Washington, D.C., for Appellant.  Laurie M. Riley,
Miami, Florida, Tracy E. Kern, JONES WALKER LLP, New Orleans, Louisiana, for
Appellee.

Unpublished opinions are not binding precedent in this circuit.

NIEMEYER, Circuit Judge:

After Luis Sorto, a native of El Salvador, was fired from his position as a sales associate with AutoZone, Inc., he commenced this action against AutoZone for discrimination, harassment, and retaliation under federal and Maryland state law. The district court granted AutoZone's motion to dismiss two hostile work environment counts of the complaint but denied its motion as to the remaining counts. As to the remaining counts, however, it directed Sorto's counsel to file an amended complaint complying with applicable pleading requirements and certain specific instructions. Because counsel failed, after several attempts and court warnings, to comply with court directives and pleading requirements, the court dismissed the remaining counts with prejudice. Outlining in detail its reasons for doing so and expressing regret for the necessity of its action, the court summarized, "I just see complete indifference and defiance of the court's order. I've laid out what needs to be done to comply and what I've gotten is further noncompliance."

From the district court's dismissal orders, Sorto appealed, challenging each order. For the reasons given, we affirm.

I

For purposes of this appeal, the facts alleged in Sorto's complaint are taken as true.

Sorto began his employment with AutoZone in October 2011 as a sales associate in Newport News, Virginia. Shortly after he began, the store was robbed while Sorto was working, and the store manager accused Sorto of being a conspirator in the robbery. In the

2

months that followed, the manager blamed Sorto when items were misplaced in the store, commenting, "I know how all you Latinos are."

Some six months later — in the summer of 2012 — another AutoZone manager remarked that Sorto "stinks and smells like sheep," which sparked a pattern of sheep-related mockery that continued throughout Sorto's employment at the Newport News store. His managers began to call Sorto "sheep" or "Luis Sheep," used a sheep hand puppet to call him over, and changed his nametag to read "Luis Sheep."  Other employees also posted pictures of sheep on the company board and started calling Sorto "sheep" or another variant, "Luis Serta-Sorto Sheep," apparently referring to the Serta mattress company's use of sheep in its advertising and the closeness of the names "Sorto" and "Serta."  Unrelatedly, employees also called Sorto, "Hello Kitty."

In August 2015, Sorto was transferred to the AutoZone store in Laurel, Maryland. Shortly after he was transferred, he sustained a wrist injury during a workplace accident. Sorto's managers were displeased when Sorto requested medical leave to receive treatment for the injury and declined to assign him to light duty, although Sorto's doctors recommended that he avoid heavy lifting.

While in the Laurel store, Sorto again began to receive verbal insults from other employees.  Particularly, in the spring of 2016, a newly-hired employee started calling him "gay," "princess," "Hello Kitty," and "a Mexican" due to Sorto's shoulder-length hair, explaining that "only Mexican females have long hair."  Other employees yelled to him, "Orale."  While Sorto did not explain in his complaint nor in any subsequent briefing what "Orale" meant, according to Wikipedia, it is "a common Spanish interjection in Mexican

3

Spanish slang" that is used in the United States "as an exclamation expressing approval or encouragement." *Órale*, Wikipedia (last accessed June 15, 2020), https://en.wikipedia.org/wiki/%C3%93rale. Although Sorto reported these various comments to the store's assistant manager and to a human resources representative, AutoZone took no action. And because of this inaction, Sorto informed his managers that he would be absent from work on April 27, 2016, in order to file a complaint with the U.S. Equal Employment Opportunity Commission. The following week, Sorto's employment was terminated.

Over a year later, in August 2017, Sorto commenced this action alleging claims of race discrimination, hostile work environment and harassment, and retaliation, in violation of 42 U.S.C. § 1981 and the Maryland Fair Employment Practices Act ("MFEPA"); failure to accommodate and disability retaliation, in violation of MFEPA; and interference, in violation of the Family and Medical Leave Act ("FMLA").

AutoZone filed a motion to dismiss the complaint, except for Sorto's claims that he was fired due to race-based discrimination and in retaliation for reporting harassment. With respect to Sorto's hostile work environment claims — Counts II and V — the district court granted the motion to dismiss at a hearing on June 6, 2018. It found that many of the allegations in the complaint fell outside the statute of limitations period for harassment under § 1981 and MFEPA, and, with respect to those that may have fallen within the limitations period, it concluded that the allegations did not allege harassment based on race. It denied the motion as to the remaining counts of the complaint. Nonetheless, it struck the entire complaint because Sorto had repeatedly failed to comply with pleading

4

requirements. The court directed Sorto to file a second amended complaint in compliance with the rules, explaining specifically what he was required to do. While Sorto filed a second amended complaint on June 21, 2018, he continued to violate the court's directives. AutoZone filed a motion to strike the offending allegations or to dismiss the entire complaint for failure to comply with the court's orders and pleading rules. At a hearing on February 22, 2019, the court explained in detail how Sorto's second amended complaint failed to comply with the court's orders and applicable pleading rules. While the court acknowledged that dismissal of the complaint with prejudice was "an extreme sanction to be examined carefully," it determined that this was the appropriate response in the face of "complete indifference and defiance of the court's order." Accordingly, it dismissed the entire complaint with prejudice.

From the district court's orders of dismissal dated June 6, 2018, and February 22, 2019, Sorto filed this appeal.

## II

Sorto contends first that the district court erred in dismissing Counts II and V of his complaint, which purported to state hostile work environment claims under federal and state law. As relevant to those counts, Sorto alleged that while at the Newport News store from 2011 to 2015, his manager called him a Latino while implying that Latinos were untrustworthy; his managers and fellow employees repeatedly referred to him as a sheep; and fellow employees called him "Hello Kitty." And he alleged that while at the Laurel store, an employee called Sorto "gay," "princess," "Hello Kitty," and "Mexican," referring

5

to his long hair.  Other employees also yelled "Orale" at him.  The district court concluded that, with respect to any alleged act that was within the statute of limitations, the complaint failed to state a claim upon which relief could be granted under either § 1981 or the MFEPA.

To state a claim under either statute, a plaintiff is required to set forth sufficient allegations to demonstrate that there was "(1) unwelcome conduct; (2) that is based on the plaintiff's race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (cleaned up) (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011)). Harassment is considered sufficiently severe or pervasive so as to alter the terms or conditions of employment if a workplace is "permeated with discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (cleaned up).

We conclude that the allegations are insufficient as a matter of law to demonstrate liability under these statutes, even if we assume that all were timely.  The isolated references to Sorto as a Latino, implying that he was untrustworthy, and Mexican, because of his long hair, were made over 4 years apart and in two different workplace locations and thus cannot be the basis for a workplace "permeated with discriminatory intimidation." *See Harris*, 501 U.S. at 21.  And the remaining terms he alleged were used to insult him — sheep, Hello Kitty, gay, and princess — cannot be attributable to race-based discrimination.  Neither sheep nor the fictional Japanese character Hello Kitty are commonly associated with people of Hispanic origin, and references to them, though

6

unwelcome and quite possibly harassing, do not provide evidence of race-based discrimination. Likewise, comments implying that Sorto was effeminate or gay were unrelated to race. And with respect to the use of "Orale," Sorto has not provided any basis from which to infer that the word was even offensive. Indeed, all indications are just the opposite. Even if its use was intended to be sarcastic, we cannot conclude that it was in any way was based on race.

Sorto argues on appeal that the sheep-related comments were motivated by racial animus because they "compare[d] a person or people to animals," which "can constitute racial discrimination." To make that argument, Sorto relies on our decision in *Boyer-Liberto*, where we explained that using the term "porch monkey" to address a black person was akin to using the n-word because of the long history of disparagingly comparing African-Americans to primates. 786 F.3d at 280. But Sorto does not point to a single authority for the proposition that Latinos are associated with sheep, nor does he explain why he subjectively interpreted "sheep" as a race-based slur. Rather, the allegations in Sorto's complaint suggest that the sheep comments were intended to poke fun at Sorto's odor or his name, which sounds like "Serta," a mattress company whose mascot was a sheep. But neither explanation relates to Sorto's race.

Accordingly, we conclude that the district court did not err in dismissing Counts II and V of Sorto's complaint, which contained hostile work environment claims.

7

## III

Sorto contends that the district court abused its discretion in dismissing with prejudice the remaining counts as alleged in his second amended complaint, based on the court's conclusion that Sorto failed to comply with pleading rules and the court's repeated directives about complying with them.

AutoZone claims that, in the circumstances of this case, the district court "acted well within its discretion," as "Sorto's counsel had repeatedly and blatantly disregarded the local rules, the Federal Rules of Civil Procedure, and the District Court's instructions." AutoZone added, "Given that Sorto continues [on appeal] to engage in the very misconduct noted by the district court in these proceedings (such as improperly filing an exhibit to his brief, citing to the incorrect amended complaint, and by persisting in making unnecessary and sarcastic remarks toward AutoZone's counsel), it is clear that the district court did *not* abuse its discretion in dismissing [the remaining counts of Sorto's second amended complaint]."

Sorto's efforts in filing a complaint in compliance with pleading rules and the court's directives were indeed convoluted, unresponsive, and even contumacious.

Sorto commenced this action in 2017, purporting to allege claims under § 1981, the MFEPA, and the FMLA. AutoZone filed a motion to dismiss the complaint, except for his claims that he was fired due to race based discrimination or in retaliation for reporting harassment. Rather than respond to the motion, Sorto sought to file an amended complaint on November 3, 2017. This complaint, however, was rejected for its failure to comply with Local Rule 103.6(c), which requires that a party filing an amended pleading simultaneously

8

file "a copy of the amended pleading in which stricken material has been lined through or enclosed in brackets and new material has been underlined or set forth in bold-faced type" — *i.e.*, a red-line copy.

Four days later, on November 7, 2017, Sorto filed another amended complaint, as well as a document labeled "Redlined Copy of [First Amended Complaint]." Nonetheless, this version, too, failed to comply with Local Rule 103.6(c) — the purported red-line copy did not accurately identify stricken and new material. In substance, the allegations of the first amended complaint were essentially unchanged, but the amended complaint included arguments addressing AutoZone's partial motion to dismiss, which the amended complaint described as "riddled with legal errors." AutoZone again filed a motion to dismiss, and the district court scheduled a hearing on the motion.

In preparing for the hearing, the district court realized that Sorto had yet to file a correct red-line version of the amended complaint and ordered him to do so by May 30, 2018, before the hearing scheduled for June 6, expressing concern about "the flippant attitude of Plaintiff's counsel regarding the Local Rules."

Sorto filed another purported red-line copy on May 29, 2018, but this version again failed to identify correctly new material or material stricken from the prior complaint.

At the hearing held on June 6, 2018 — the hearing at which the district court dismissed Sorto's claims asserted in Counts II and V — the court reiterated its consternation at Sorto's repeated failure to comply with the requirements of the Local Rules, as well as applicable pleading rules. With respect to the pleading, the court noted that Sorto's allegations were not "simple, concise and direct," as required by Federal Rule

9

of Civil Procedure 8, in that it included unnecessary and unnecessarily scathing legal arguments regarding AutoZone's motion to dismiss, and it made repeated references to Title VII of the Civil Rights Act of 1964, even though the complaint did not purport to bring any claim under Title VII. Accordingly, even though the court denied AutoZone's motion to dismiss the remaining counts on the merits, it struck the entire complaint, giving Sorto leave to file a second amended complaint on the remaining counts. In doing so, the court gave Sorto the following instructions:

> I want to make certain that there's no question in plaintiff's counsel's mind as to what I'm complaining about or concerned about.
>
> The complaint is far too long. It has allegations in it that are wholly irrelevant to the submission of a proper complaint under the Federal Rules of Civil Procedure. There certainly are some very straightforward and simple ones that I have no problem with. But this is a 27-page complaint that can certainly be far shorter than what it is now and be more carefully drafted so it's not laced with errors such as the Title VII error we've talked about. It needs to be cleaned up to not include matters that are barred by limitations consistent with the ruling that I've made.
>
> And you need to also understand that you don't plead matters of evidence and you plead facts and I mean there's endless quotations of conversational banter that is of no particular moment.

To assist Sorto's counsel, the court "relieved [him] of any obligation to do a redline because there's not been apparently an ability on the part of the plaintiff to do that."

In its final effort to comply with the court's directives and the rules, Sorto filed a second amended complaint on June 21, 2018. With the exception of omitting legal arguments that addressed AutoZone's motion to dismiss on the merits, the second amended complaint was substantially similar to the first amended complaint. And Sorto failed to

10

excise allegations related to his hostile work environment claims (which the court had dismissed on the merits) or to delete the citations to Title VII.

The court conducted another hearing on February 22, 2019, to address AutoZone's motion to dismiss the second amended complaint with prejudice. The court granted the motion in exasperation, recounting the procedural history. The court began:

> This complaint was filed in this court for the first time in August 2017. Here we are coming upon the end of February 2019 and we still have not managed to get this case at issue.
>
> [Sorto's counsel] says he's got ten years of experience. We have dealt with lapses of his compliance with the rules of this court over and over again. We finally gave up on [his] ability to file a simple red line, which means you know or strikeout what's taken out show with the red lines what's added in. Over and over and over again he could not do it. And rather than create a side show on that problem, I simply relieved him of the requirement of a red line so we could get on with the court's business.

The court then addressed the other failures in counsel's earlier attempts at filing a complaint. After detailing the procedural history and the errors over several pages of transcript, the court concluded:

> [T]he court's rules govern the proceedings before it and what I'm terribly concerned about is [counsel] is unable to accept that basic concept that Rule 8 calls for a short and plain statement of the case. He's not done that. He's persisted in filing complaints that read like a dime-store novel, are dripping with sarcasm towards opposing counsel. And I'm not confident we'll ever get forward at all in this case as long as [counsel] is at the helm of the Plaintiff's case.
>
> And I'm deeply troubled by his behavior, deeply troubled by his attitude toward the court and deeply troubled by his attitude towards discovery issues in this case. . . . I'm going to grant the motion to dismiss with prejudice of the complaint in this case. I regret that that step is necessary. But I just see complete indifference and defiance of the court's order. I've laid out what needs to be done to comply and what I've gotten is further noncompliance.

11

Under these facts, we conclude that the district court did not abuse its discretion in dismissing the complaint. *See* Fed. R. Civ. P. 41(b) (authorizing dismissal where a plaintiff "fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order"); *Attkisson v. Holder*, 925 F.3d 606, 625 (4th Cir. 2019) (explaining that district courts have the "inherent power" to involuntarily dismiss an action that derives from "the control necessarily vested in courts to manage their own affairs") (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962))).

As described above, Sorto repeatedly ignored the dictates of the Local Rules and the district court's express instructions for amending his complaint, instead filing a series of substantially similar, flawed pleadings. *See Attkisson*, 925 F.3d at 624 (affirming the dismissal of a complaint with prejudice based on the plaintiff's failure to comply with the court's instructions in amending their complaint, continued inclusion of claims that the court had previously dismissed, and the addition of a defendant that the court had denied leave to add); *Stanard v. Nygren*, 658 F.3d 792, 801 (7th Cir. 2011) (affirming dismissal of a complaint with prejudice after the district court had granted the plaintiff leave to amend the complaint multiple times but he "made almost no changes in each new version"). In light of this pattern of noncompliance, we see no error in the court's assessment that Sorto's failures constituted outright defiance, rather than mere oversight, and accordingly a sanction less drastic than dismissal would likely have been ineffective. *See Hillig v. Comm. of Internal Revenue*, 916 F.2d 171, 174 (4th Cir. 1990).

To be sure, we are mindful that sound public policy favors deciding cases on their merits and therefore that the power to dismiss must be exercised "with restraint." *Dove v.*

12

*CODESCO*, 569 F.2d 807, 810 (4th Cir. 1978). To that end, we require district courts weighing dismissal under Rule 41(b) to consider not only "the effectiveness of sanctions less drastic than dismissal" but also "the plaintiff's degree of personal responsibility," "the amount of prejudice caused the defendant," and "the presence of a drawn out history of deliberately proceeding in a dilatory fashion." *Hillig*, 916 F.2d at 174; *see also United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462–63 (4th Cir. 1993) (listing additional factors that a district court must consider before dismissing an action as a sanction for willful deceit of the court); *but see Attkisson*, 925 F.3d at 625 (noting that the *Hillig* criteria "are not a rigid four-prong test" and that "the propriety of an involuntary dismissal ultimately depends on the facts of each case" (cleaned up)). But Sorto failed to raise this issue on appeal, instead arguing that the court erred in dismissing his second amended complaint because, in his view, that filing complied with the requirements of Rule 8. We therefore need not reach the question of whether the district court's reasoning for dismissal gave sufficient consideration to each of the requisite factors. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief").

For these reasons, while we recognize that dismissal with prejudice for failure to follow orders is an extreme remedy, we conclude that it was not an abuse of discretion for the court to have done so in the circumstances presented in this case.

\*       \*       \*

For the reasons given, the judgment of the district court is

AFFIRMED.

13

WYNN, Circuit Judge, concurring in the judgment, dissenting in part:

I concur in the judgment only in this matter because, in my view, the district court dismissed this case in its entirety after finding that Sorto's counsel repeatedly refused to comply with the court's instructions, the local rules, and basic pleading requirements.

That should end this matter, but the majority went on to hold that Sorto's allegations of a race-based hostile work environment under § 1981 and the Maryland Fair Employment Practices Act ("MFEPA") were insufficient. However, I believe Sorto's allegations are sufficient because common sense and our precedents hold that comparisons to animals, such as the alleged references to Sorto as a "sheep," are often racially motivated.

I.

A.

First, I agree that the district court did not abuse its discretion in dismissing this case with prejudice. The record shows that Sorto's counsel repeatedly persisted in filing confusing, indeterminate complaints while ignoring the district court's instructions, the local rules, and Rule 8's requirement of concise pleadings that put the defendant on notice of the claims against it. *See* Fed. R. Civ. P. 8(a). In such circumstances, district courts have wide latitude to dismiss with prejudice, and we review such dismissal for abuse of discretion. *See North Carolina v. McGuirt*, 114 F. App'x 555, 558 (4th Cir. 2004) (per curiam) (collecting cases). We have found no such abuse where, as here, a plaintiff repeatedly submitted complaints full of irrelevant facts that ostensibly apply to every asserted cause of action, forcing the reader to "wade indeterminately through [a] morass of superfluous detail." *Id.* at 559; *see also Attkisson v. Holder*, 925 F.3d 606, 625 (4th Cir.

14

2019); *Smith v. Int'l Longshoremen's Ass'n*, 592 F.2d 225, 226 (4th Cir. 1979) (per curiam); *Addahoumi v. Pastides*, No. 3:16-CV-1571-CMC-SVH, 2018 WL 636122, at *2-4 (D.S.C. Jan. 30, 2018), *aff'd*, 745 F. App'x 478 (4th Cir. 2018) (per curiam). So, I concur with the majority that the district court did not abuse its discretion in dismissing with prejudice.

## B.

The picture that emerges from the record is a party who ignored the district court as it sought to ascertain, streamline, and simplify the issues before it. This disregard caused the district court to state that it was "not confident we'll ever get forward at all," J.A. 192, and dismiss the "complaint in this case," J.A. 193. That dismissal mooted review on the merits of the earlier-dismissed hostile work environment claims.

For example, at the motions hearing on Sorto's First Amended Complaint, the district court noted that Sorto's counsel had explicitly declined to follow the local rules, inserted confusing and irrelevant references to Title VII, and added legal arguments, citations, quotations, and irrelevant personal asides responding to AutoZone's motion to dismiss the original Complaint. The district court also noted that the First Amended Complaint did not comply with Rule 8's requirement of a short and plain statement of the claims:

> The complaint is far too long. It has allegations in it that are wholly irrelevant to the submission of a proper complaint under the Federal Rules of Civil Procedure. . . . [T]his is a 27-page complaint that can certainly be far shorter than what it is now and be more carefully drafted so it's not laced with errors . . . . [T]here's endless quotations of conversational banter that is of no particular moment.

15

J.A. 128-29. After dismissing Counts II and V, the district court directed Sorto to file a Second Amended Complaint and relieved counsel of his obligation to file a redline pursuant to the local rules "because there's not been apparently an ability on the part of the plaintiff to do that." J.A. 129.

Sorto's counsel did not meaningfully comply with the district court's directive, instead filing a Second Amended Complaint that incorporated by reference all factual allegations for each claim, retained language relating to Title VII, and retained alleged verbatim quotes by coworkers in support of various claims, contrary to the district court's instruction to remove them.

The district court took Sorto's counsel to task at the motions hearing on the Second Amended Complaint. The court first generally noted the Second Amended Complaint's deficiencies—that it persisted in lengthy and irrelevant factual allegations in "virtual defiance" of the court's instructions. J.A. 191. However, the district court's frustrations with counsel went beyond the problems with the Second Amended Complaint. It found "complete indifference and defiance of [its] order," and pointed to counsel's repeated disregard of Rule 8 and the local rules. J.A. 193. And it noted that Sorto's counsel had proven unable to advance the case:

> [W]hen you look at what's happened in this case, how long it's been pending and how little has been accomplished so far, *I have no confidence that a mere striking out of some paragraphs that are clearly improper in the complaint is going to do anything other than lead us to more chaos with an advocate, who is simply not willing to comply with the rules of the game laid out by the court system.* . . . [W]hat I'm terribly concerned about is [that plaintiff's counsel] is unable to accept th[e] basic concept that Rule 8 calls for a short and plain statement of the case. He's not done that. He's persisted in filing

16

complaints that read like a dime store novel, are dripping with sarcasm towards opposing counsel.

J.A. 192 (emphasis added).

The district court concluded that it was "not confident we'll ever get forward at all in this case as long as [plaintiff's counsel] is at the helm . . . . I just see complete indifference and defiance of the court's order. I've laid out what needs to be done to comply and what I've gotten is further noncompliance." J.A. 192-93. Accordingly, the district court stated that it was "dismiss[ing] with prejudice [] the complaint *in this case*." J.A. 193 (emphasis added).

The district court's dismissal thus rested on counsel's demonstrated refusal to comply with the court's directives and basic pleading requirements, and its finding that the case could not proceed due to that noncompliance. Because that problematic course of conduct was not specific to the Second Amended Complaint, but instead occurred at every stage of the pleadings, I would find that the district court dismissed the entire case with prejudice. Accordingly, we should not—as the majority does—reach the question of whether Sorto adequately stated a claim of a race-based hostile work environment due to his coworkers' references to him as a "sheep." I simply fail to see how we could accord Sorto any relief given the district court's stated reasons for dismissing with prejudice— unless we were to hold that dismissal to be an abuse of discretion. *See Norfolk S. Ry Co. v. City of Alexandria*, 608 F.3d 150, 161 (4th Cir. 2010) (noting an issue is moot when "our resolution of [the] issue could not possibly have any practical effect on the outcome of the matter"); *see also McMillan v. Doe*, 801 F. App'x 204, 205 (4th Cir. 2020) (per curiam)

17

(dismissing appeal of motion as moot in light of district court's dismissal of complaint with prejudice).

## II.

However, if we were to reach the merits, comparisons of individuals to animals are frequently racially motivated. So, although the issue is moot, the majority is incorrect to conclude as a matter of law that Sorto failed to adequately allege a race-based hostile work environment under § 1981.[1]

## A.

Disparaging references based on Sorto's Hispanic ethnicity are actionable under § 1981. The Supreme Court has noted that race-based claims under § 1981 are construed broadly due to Congress's intent to protect individuals from discrimination based on their ethnic characteristics, "whether or not [those] would be classified as racial in terms of modern scientific theory." *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987); *see also id.* ("Based on the history of § 1981, we have little trouble in concluding that

_____

[1] As the district court noted, consideration of Sorto's MFEPA claims is precluded by that law's two-year statute of limitations, and Sorto has waived any argument that a longer statute of limitations should apply by arguing that the relevant limitations period is two years. *See* Md. Code. Ann., State Gov't § 20-1013(a)(3) (West 2009). Sorto filed his original Complaint on August 7, 2017. So, any race-based conduct occurring before August 7, 2015 is barred under MFEPA. That includes the entirety of Sorto's complained-of conduct at the Newport News AutoZone because Sorto began working at the Laurel AutoZone on August 4, 2015. Although Sorto encourages us to consider the Newport News conduct under the continuing violation doctrine, *see Prince of Peace Lutheran Church v. Linklater*, 28 A.3d 1171, 1188 (Md. 2011), on the basis that he was subjected to verbal insults after transferring to the Laurel AutoZone, Sorto has not plausibly alleged that those insults involved race-based discrimination.

18

Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics."). We noted § 1981's broad reach in *Nnadozie v. Genesis HealthCare Corp.*, citing cases stating that § 1981 protects from discrimination on the basis of being Jewish, Middle Eastern, or Iranian. 730 F. App'x 151, 157-58 (4th Cir. 2018) (collecting cases). Our sister Circuits have likewise recognized § 1981's broad remit. *See Vill. of Freeport v. Barrella*, 814 F.3d 594, 607 (2d Cir. 2016) (noting that race, for purposes of § 1981 and Title VII, encompasses Hispanic ethnicity); *see also Abdullahi v. Prada USA Corp.*, 520 F.3d 710, 712 (7th Cir. 2008); *Pavon v. Swift Transp. Co.*, 192 F.3d 902, 905, 908 (9th Cir. 1999); *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387 n.7 (10th Cir. 1991); *Jatoi v. Hurst–Euless–Bedford Hosp. Auth.*, 807 F.2d 1214, 1218 (5th Cir. 1987). Allegations of discrimination under § 1981 are thus not limited to "taxonomically defined racial groups," but extend to discrimination based on a plaintiff's membership in an ethnic group. *Jatoi*, 807 F.2d at 1218.

Sorto's allegations that he was discriminated against for being Hispanic fall well within these precedents and § 1981's broad remedial purpose.

B.

Sorto also alleges that because of his Hispanic ethnicity, he was subjected to three years of discriminatory conduct; namely, AutoZone employees stating he "stinks and smells like sheep," referring to him as "Sheep" or "Luis Sheep," changing his name tag from "Luis Sorto" to "Luis Sheep," using a sheep hand puppet when speaking to him, and posting images of sheep on the company's internal bulletin board. J.A. 144-45. Sorto also

19

alleges that regular customers, taking their lead from his coworkers, referred to him as "sheep f*cker" and "sheep herder" on a daily basis. J.A. 145.

As a matter of common sense and experience, race-based insults are often grounded in comparisons to animals. Accordingly, we have held that such comparisons are frequently racially motivated. In *Boyer–Liberto v. Fontainebleau Corp.*, we stated that "describing an African–American as a monkey, and thereby suggesting that a human being's physical appearance is essentially a caricature of a jungle beast, goes far beyond the merely unflattering; it is degrading and humiliating in the extreme." 786 F.3d 264, 280 (4th Cir. 2015) (en banc) (internal quotation marks and alterations omitted) (citing *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001)).

In reaching that conclusion, we recognized this country's long history of referring to African Americans in this derogatory manner. *See id.* (citing *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 911 (8th Cir. 2006)). The majority seizes on this historical explanation, concluding that because Sorto did not provide any authority showing that Hispanics are frequently compared to sheep due to racial prejudice, *Boyer–Liberto* cannot apply.

But the majority is wrong to require a historical record of a racist stereotype before we may entertain a claim of a race-based hostile work environment. Contrary to the majority's reasoning, our decision in *Boyer–Liberto* did not rest on the social context behind the animal comparison at issue. *See id.* Rather, we noted more generally that such comparisons are "degrading and humiliating in the extreme." *Id.* (quoting *Spriggs*, 242 F.3d at 185); *see Rios v. Xact Duplicating*, No. 10 CIV. 8875 JSR, 2012 WL 1681398, at

20

*1-2 (S.D.N.Y. May 8, 2012) (finding comments that compared Hispanic employee to a dog and, in some instances compared that employee to the dog that served as the Taco Bell mascot, racially motivated); *see also Henry v. CorpCar Servs. Hous., Ltd.*, 625 F. App'x 607, 612-13 (5th Cir. 2015) (noting that comparisons of African American employees to gorillas were racially discriminatory given both the social context and the "highly offensive" and physically humiliating nature of the comparisons); *Webb v. Merck & Co.*, 450 F. Supp. 2d 582, 589, 597 (E.D. Pa. 2006) (finding a reasonable jury could conclude that a supervisor's references to himself as the "zookeeper" and to his African-American employees as "animals" were racially motivated); *cf. Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006) (in addressing a § 1981 claim based on a supervisor's references to African-American employees as "boy," noting, "[a]lthough it is true the disputed word will not always be evidence of racial animus, it does not follow that the term, standing alone, is always benign"). If the existence of a racist stereotype depends on whether there is a historical record of that specific stereotype, then new permutations of racism will rarely arise—but we know this is not the case.

Perhaps recognizing that *Boyer–Liberto* is a thin reed, the majority attempts to bolster its position by improperly weighing, at the pleading stage, alternative explanations for the "sheep" moniker. Specifically, the majority credits AutoZone's argument that the sheep references were either a result of Sorto's body odor or a reference to the similarity between "Sorto" and "Serta," a mattress company with a sheep mascot.

We, of course, review a district court's dismissal for failure to state a claim de novo, accepting the complaint's factual allegations as true and construing them in the light most

21

favorable to the non-moving party. *See Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018). So, faced with a motion to dismiss, the proper question is whether, taking Sorto's factual allegations as true, it was facially plausible that the sheep comments were racially motivated. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). We may not speculate as to other reasons for those comments at this point, and the majority is wrong to readily conclude that its alternative explanations eliminate any possibility that the comments were racially motivated.

Instead, as courts have noted and as common experience teaches, comparing an individual to an animal is frequently racially motivated. Accordingly, I would find that Sorto has sufficiently alleged a hostile work environment based on his race.[2] *See Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011). However, I only address this issue because the majority improperly reaches it.

---

[2] Because Sorto alleges that the discriminatory sheep comparisons occurred regularly across three years, I would find he has also alleged that his workplace was sufficiently permeated with ridicule and insult so as to create an abusive work environment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). I would likewise find that Sorto has adequately alleged the factors the parties do not dispute—whether the conduct was unwelcome and imputable to AutoZone. *See Okoli*, 648 F.3d at 220.

22